MINNIE B. BRITTENHAM, Respondent, v. SOVER-
    EIGN CAMP WOODMEN OF THE WORLD,
    Appellant.

Springfield Court of Appeals, June 13, 1914.

1. INSURANCE: Contracts of: Forfeiture: Construction. The
   law does not favor forfeitures and contracts of insurance, pro-
   viding for forfeitures, should be strictly construed against the
   insurer.

2. MUTUAL BENEFIT INSURANCE: Contracts: Construction
   of. Conditions and provisions in a fraternal life insurance con-
   tract presenting an ambiguity are to be construed most strongly
   against those for whom they are introduced.

3. ————: Certificates: Construction of Entirety. In constru-
   ing mutual life insurance certificates effect must be given if
   possible to all parts thereof, both written and printed.

4. ————: ————: By-laws Part of Contract. Where a member
   of a fraternal insurance order did not comply with the by-laws
   requiring members to give notice before engaging in certain
   occupations which were prohibited and pay the additional fee
   required, his certificate was void, because under Acts 1911, p.
   286, sec. 9, the by-laws, rules and constitution of fraternal
   insurance orders are made a part of the contract by the cer-
   tificate.

5. ————: Contracts: Obedience to All Provisions. Under a
   fraternal insurance certificate to enable the beneficiary to
   recover, the insured must have been obedient to the terms and
   conditions contained in the application, certificate, rules, by-
   laws and constitution, which must be construed together when
   made a part of the contract.

6. ————: Certificates: Provisions of: Waiver. When a fraternal
   insurance certificate provides that no member or officer of a
   local camp can waive any of the provisions of the contract, so
   far as the sovereign camp is concerned, such provision will be
   upheld. [Session acts 1911, p. 292, sec. 22.]

7. ————: Violating Terms of Contract: Forfeiture. The by-
   laws of a fraternal insurance company provides that if a member
   should engage in certain occupations prohibited by the cer-
   tificate, he should give notice thereof and pay an additional
   premium, otherwise the certificate would be void. The cer-
   tificate of a member who failed to comply with these provisions
   was invalidated without action by the insurer.

8. ————: **Agreements of Forfeiture: Enforcement.** Where it is agreed that forfeiture will result in case the assessments on a fraternal certificate are not paid, such agreement will be enforced by the courts regardless of whether the condition be considered precedent or · subsequent.

9. ————: **By-laws Construed.** A member of a fraternal insurance order engaged in a prohibited occupation and did not give notice thereof as required nor pay the additional premiums necessary to prevent forfeiture. Although the by-laws provided that payment of a certificate should not be contested save on stated grounds when the same had been in force for five consecutive years immediately preceding death, while the member was in good standing, recovery could not be had because the member having failed to meet the requirements was not a member in good standing at the time of his death.

10. ————: **Estoppel: When not Available.** A member of a fraternal insurance order violated the provisions of his certificate by engaging in a prohibited occupation, which' worked a forfeiture of his certificate under the agreement. Of this violation the officers of the order were not cognizant, no notice having been given them as required by the certificate. The order was not estopped from setting up the forfeiture as a defense merely because it had refused payment on another ground.

Appeal from Jasper County Circuit Court, Division No. Two.—*Hon. David E. Blair,* Judge.

REVERSED.

*James P. Mead* and *C. V. Buckley* for appellant.

(1) Suit against a Fraternal Beneficiary Association. It is not an insurance company and is not governed by the insurance statutes of this State. Its constitution, all the provisions of the certificates, or policies, its by-laws, rules and regulations, either in force at the time a person becomes a member or enacted afterwards, are binding on him. Statutes 1911, p. 284; Evans v. Modern Woodmen of America, 147 Mo. App. 155; Westerman v. Knights, etc., 196 Mo. 670, 704, 727. (2) The monthly dues must be paid ·as provided; if not the member is *ipso facto,* by the very act, suspended. There is no notice, no judicial finding, neces-

sary to be given to the member, nor determined, in order for the member to become suspended and his certificate to become null and void and for his beneficiary to lose all benefits therefrom. It is a rule of the association. Sec. 109, Subsection (B) By-Laws; Burke v. Lodge, 136 Mo. App. 450; Burchard v. Western, etc., 139 Mo. App. 606; Easter v. B. F. A. Y., 154 Mo. App. 456; Britt v. Sovereign, etc., 153 Mo. App. 698; Knode v. Modern Woodmen of America, 171 Mo. App. 377. (3) No member of local camp has a right to waive any provision of the by-laws, etc. Laws 1911, p. 292, section 22; Day et al. v. Supreme Forest Woodmen Circle, 174 Mo. App. 260; Lavin v. Grand Lodge, etc., 104 Mo. App. 1; Same case, 112 Mo. App. 1; Clair v. Royal Arcanum, 172 Mo. App. 709. (4) Each and every agreement, stipulation, by-law, etc., must be fulfilled by the policyholder in order for him to get the advantage of the benefits. He must bring himself within the provisions of the non-contestable by-laws in order to cut the defendant off from the several defenses that it sets up. He must be in good standing; this he could not have been when he had entered a prohibited business or occupation. As soon as he became a bartender, and did not notify the clerk of the local camp of that fact and pay the additional fifty cents, he became suspended and his interest in the beneficial fund lost. Ellerbe v. Faust, 119 Mo. 653; Knode v. M. W. of A., 171 Mo. App. 377; Clair v. Royal Arcanum, 172 Mo. App. 709.

*Walden & Andrews* for respondent.

(1) Certificates of insurance in fraternal beneficiary association are not exempt from the general rule that forfeitures are not favorites of the law, and that contracts providing for forfeitures should be strictly construed against the insurer. Matthews v. Modern Woodmen, 236 Mo. 326-344; McMahan v. The Macca-

bees, 151 Mo. 522-527; Burke v. A. O. U. W., 136 Mo.
App. 456. (2) Conditions and provisions in policies
are to be construed strictly against the insurer, as
they tend to narrow the range and limit the force of the
principal obligations. Conditions providing for dis-
abilities and forfeitures are to receive, where the in-
tent is doubtful, a strict construction against those for
whose benefit they were introduced. Renn v. The Su-
preme Lodge, 83 Mo. App. 447; Matthews v. Modern
Woodmen, 236 Mo. 343; Walton v. The Fraternal Aid,
149 Mo. 493-496; Burchard v. The Insurance Co., 139
Mo. App. 606. (3) Effect must be given if possible to
all parts of the policy, both written and printed. 16
Am. & Eng. Ency. of Law (2 Ed.), 864; Matthews v.
The Woodmen, 236 Mo. 326; Clark v. Modern Wood-
men, 170 Mo. App. 210. (4) Where the contract is of
doubtful or ambiguous meaning, it will be construed
most strongly against the insurers. Matthews v. The
Woodmen, 236 Mo. 326; Aetna Life Ins. Co. v. Mining
Co., 154 S. W. 829; 16 Am. & Eng. Ency. Law (2 Ed.),
863. (5) Plaintiff's tender of the August assessment,
during the month of August, and offer to pay the same
prevented assured's policy from lapsing. Stephenson
v. Kilpatrick, 166 Mo. 267; Berthold v. Reyburn, 37
Mo. 586; Wheelan v. Reilly, 61 Mo. 568; Potter v. Shaf-
fer, 209 Mo. 596; Walsh v. St. L. Exposition, 101 Mo.
534.

STATEMENT.—Plaintiff recovered a judgment for
one thousand dollars against the defendant on a bene-
ficiary certificate issued on the life of Marriaman H.
Brittenham who during his lifetime was the husband
of the plaintiff. The defendant is a fraternal benefi-
ciary association organized under the laws of the State
of Nebraska and duly authorized to do business in
Missouri. The certificate was dated May 10, 1906, and
the assured became a member of the local camp of the
order at Joplin, in this State. He died on September

28, 1912, and in due course of time this suit was instituted by the beneficiary for the face amount of the certificate.

There were three defenses pleaded in the answer.

Appellant assigns several grounds for reversal. However, under the view we take of the case it is necessary to discuss only the one which we deem decisive. It is that the assured was not in good standing in the order at the time of his death and had not been for two years prior thereto because of having engaged in a prohibited occupation, to-wit, that of bartender and helper in a saloon.

There is no controversy concerning the fact that for about two years prior to the latter part of July, 1912, the last named date being about sixty days before the death of the assured, he had been engaged as bartender and helper in at least two saloons in the city of Joplin; and there is no showing that after the latter part of July, 1912, he engaged in any other occupation. At that time he was not living with his wife. At the time of his death he was confined in the jail of Jasper county, having been arrested for shooting at his wife.

The by-laws of the defendant order as to assessments provide:

"Sec. 109 (A) All members of this order shall pay to the clerk of his camp each month their assessments; payment to be made as provided in Section 56, which shall be credited to and known as Sovereign Camp Fund; and he shall also pay such local camp dues as may be required by the by-laws of his camp; this is twenty-five cents per month; in addition to the assessment for the Sovereign Camp Fund.

"(B) If he fails to make any such payments on or before the first day of the month following, he shall stand suspended, and during such suspension his beneficiary certificate shall be void."

The amount of the assessment or rates of the assessment as provided in Section 56, above referred to,

for members between thirty and thirty-three, which Brittenham was, on each one thousand dollars, per month, is one dollar, making total dues of $1.25, per month.

The beneficiary certificate provides that "this certificate is issued and accepted subject to all the conditions on the back hereof and subject to all the laws, rules and regulations in the fraternity now in force or that may be hereafter enacted and shall be null and void if said member does not comply with all of said conditions and with all of said laws, rules and regulations of the Sovereign Camp of the Woodmen of the World that are now in force or that may hereafter be enacted and with the by-laws of camp of which he is a member." On the back of the certificate is the following: "2nd. If the admission fees, dues, and Sovereign Camp Funds assessment levied against the person named in this certificate are not paid to the clerk of his camp as required by the constitution and laws of the order, this certificate shall be null and void."

The laws of the order also provide (Sec. 42) as follows:

"Persons engaged in the following classes of business or employment shall not be admitted:

"(a)—bartenders or those engaged in the retailing of intoxicating liquors as a beverage; also persons employed in the making, compounding, distilling, rectifying or brewing of malt, spirituous, vinous or intoxicating liquors, or in the distribution or delivery of the same.

"(b)  The beneficiary certificate of a member who shall engage in any prohibited occupation shall thereby become null and void unless such member shall within thirty days after engaging in such prohibited occupation notify the clerk of his camp, in writing, of such change of occupation, and thereafter, while so engaged, pay an additional sum of fifty cents on each as-

sessment for each one thousand dollars of his beneficiary certificate.''

Subsection b of the general section 66 of the laws of the order provides:.

''(b)   The knowledge of any officer or of any of the members of the camp that a member thereof has become so far intemperate from the use of intoxicating liquors as to produce delirium tremens, or habitually uses opiates, cocaine, chloral, or other narcotic or poison, or has violated any of the provisions of these laws, or the receipt by his camp of payment of any dues or assessments, or payment by him of the same, shall not in any manner make the Sovereign Camp liable on his certificate, when by these laws his certificate is made null and void and all his rights as a member forfeited.''

Subsection a of general section 69 provides:

''(a)   No officer, employee, or agent of the Sovereign Camp, or of any Camp, has the power, right or authority to waive any of the conditions upon which beneficiary certificates are issued, or to change, vary, or waive any of the provisions of this constitution or these laws, nor shall any custom on the part of any camp or any number of camps—with or without the knowledge of any sovereign officer—have the effect of so changing, modifying, waiving or foregoing such laws or requirements.   Each and every beneficiary certificate is issued only upon the conditions stated in and subject to the constitution and laws, then in force or thereafter enacted.''

Subsection g of general section 93 provides:

''(g)   The clerk of a camp shall not by acts, representations, waivers, or by vote of his camp, have any power or authority not delegated to him or to the camp by the constitution. and laws of the order to bind the Sovereign Camp or his camp.''

Subsection a of section 109 provides:

180 App. 34

"(a) Every member of this Order shall pay to the clerk of his camp each month one assessment payment, as required by Section 56, which shall be credited to and known as 'Sovereign Camp Fund,' and he shall also pay such camp dues as may be required by the by-laws of his camp. He shall pay any additional assessments for the Sovereign Camp Fund and camp dues, or either, which may be legally called."

Subsection b of the same general section provides:

"(b) If he fails to make any such payments on or before the first day of the month following, he shall stand suspended, and during such suspension his beneficiary certificate shall be void."

Subsections a and b of general section 118 provides:

"(a) No suspended member shall be reinstated whose health is at the time impaired or who has used intoxicants to such an extent as to become frequently intoxicated, or who has become addicted to the use of opiates, cocaine, chloral or other narcotic poison to such an extent as to impair his health, or who has made false representations in his application to become a member, or been guilty of any of the offenses mentioned in these laws.

"(b) Should any clerk knowingly violate this section, he shall on proof thereof be suspended from his office by the Sovereign Commander, and expelled from the Order by his camp."

The application of Brittenham upon which the certificate in suit was issued contains, among other things, the following: "I am neither directly or indirectly engaged in any of the following prohibited occupations:—saloonkeeper, bartender; nor engaged in the retailing of intoxicating liquors as beverage, or employed in the . . . distribution or delivery of the same." Also, the following: "I hereby consent and agree that this application, consisting of two pages, to each of which I have attached my signature,

the examining physician's report and all the provisions
of the Constitution and Laws of the Order, now in force
or that may hereafter be adopted, shall constitute the
basis for and form a part of any beneficiary certificate
that may be issued to me by the Sovereign Camp of the
Woodmen of the World, whether printed or referred
to therein or not.''

Section 68 of the laws of the order provides:

''When a beneficiary certificate has been in force
for five consecutive years immediately preceding the
death, while in good standing, of the member holding
the same, the payment thereof shall not be contested on
any ground other than that his death was intentionally
caused by the beneficiary or beneficiaries, or by the
hands of justice, or from the direct result of drinking
intoxicating liquors or from the use of opiates, cocaine,
chloral or other narcotic poison.''

It is shown beyond question that the assessments
of $1.25 per month—which was the amount due monthly
from the assured provided he was not in a prohibited
occupation—had all been paid up to and including July,
1912, the same having been paid by the beneficiary, the
plaintiff herein. And, so far as the question on which
we will decide the case is concerned, it may be con-
sidered that the assessment for August, 1912, was paid
(although there is a controversy as to the payment of
that assessment, the evidence showing that defendant
claimed the August assessment was never paid, and in
fact it was not paid) and for the purpose of this case
we will treat the tender of $1.25 by the plaintiff to the
proper officer of the local camp during the month of
August, 1912, as a payment; hence it will not be neces-
sary to pass upon defendant's contention that the as-
sured was not in good standing at the time of his death
because of a failure to pay the August assessment
which was due on September 1, 1912.

It is shown that the defendant's sovereign clerk,
in answer to a demand for the amount of the certificate,

wrote a letter dated October 24, 1912, at Omaha, Nebraska, addressed to plaintiff's attorneys, which is as follows:

"In reply to your recent letter relative to the death of Mr. H. M. Brittenham, we have investigated the membership formerly held by the deceased in our Camp No. 395 at Joplin, and find that this membership was suspended on September 1st for nonpayment of dues and assessments, and was not subsequently reinstated.

"Assuming that death occurred since the date of his suspension from this Order, it would be impossible for us to assume any liability as a result thereof. Our local clerk has regularly reported the suspension of the deceased, and I presume, having knowledge of the same, has not reported the death of Mr. Brittenhan.

"The fact that he was suspended would render his beneficiary certificate void."

There is no evidence that any of the sovereign camp officers ever knew at any time from the date of the issuance of the certificate to the date when the letter was written that the insured had ever engaged in a prohibited occupation.

## OPINION.

FARRINGTON, J.—The respondent attempts to escape the consequence of the certificate being avoided according to its terms on account of the assured violating the rules of the order by going into a prohibited occupation and continuing in the same for a period of two years prior to his death and failing to give the required written notice which he agreed to do and failing to pay the additional fifty cents per month required under the contract of a member engaged in such occupation after having given the written notice, *first,* on the ground that the certificate, having been issued more than five years and the regular monthly assess-

·ments of $1.25 (the amount due from the assured if not in a prohibited business) having all been paid, no contest could be made on the certificate because the assured's death did not result from one of the causes enumerated in section 68 hereinbefore set forth; in other words, because the certificate was over five years of age, respondent contends that it is incontestable on any ground other than those shown in said section; *second,* on the ground that the letter of October 24, 1912, refusing to pay the benefit because of the failure to pay the August 1912 assessment, estopped defendant from making any other defense.

In deciding this case we agree with respondent's counsel that we must bear in mind that certificates of insurance in fraternal beneficiary associations are not exempt from the general rule that forfeitures are not favored in the law, and that contracts of insurance providing for forfeitures should be construed strictly against the insurer (see, Mathews v. Modern Woodmen, 236 Mo. 326, 344, 139 S. W. 151; McMahon v. Maccabees, 151 Mo. 522, 52 S. W. 384) ; and that where conditions and provisions in a certificate express a doubtful intent they are to be construed most strongly against those for whom they were introduced (see, Renn v. Supreme Lodge K. of P., 83 Mo. App. 442, 447; Mathews v. Modern Woodmen, supra; Walton v. Fraternal Aid Ass'n, 149 Mo. App. 493, 130 S. W. 1124) ; and that effect must be given, if possible, to all parts of the certificate, both printed and written (see, 16 Am. and Eng. Ency. Law, 863, 864; Mathews v. Modern Woodmen, supra; Clark v. M. W. A., 170 Mo. App. 210, 156 S. W. 72.).

With these rules in mind we are still unable to see wherein section 68 relieved the assured of the effect of the positive by-law of the order making the certificate void when he entered into the prohibited occupation and agreed that it would become void unless he gave a written notice of such intention to the proper officers.

Nor can he be considered as in good standing from the viewpoint of payment of dues. It is uncontroverted that one of his age should pay $1.75 per month while engaged in the prohibited business. Yet plaintiff in her examination in chief asserts that she had always paid the assessments on this certificate and that $1.25 is all that she ever paid or that she knew had to be paid. As we view it, according to the terms of his agreement, the certificate became void the first month he entered the saloon business, having failed to give the written notice required and to subsequently pay every month the extra fifty cents, and that the certificate by its terms remained void from that time until his death as he was never reinstated in the order as provided in its by-laws.

His agreement to be bound by the by-laws, rules and regulations of the order is a binding part of his contract under our statutes relating to this character of insurance. [Session Acts 1911, p. 286, section 9.]

The application, certificate, rules, by-laws and constitution, when they are made a part of the contract, must be construed together, and a member must have been obedient to such conditions and terms as are set forth in order that his beneficiary may recover. [Loyd v. Modern Woodmen, 113 Mo. App. 19, 87 S. W. 530.]

When a contract of insurance (of this character) provides that no member or officer of a local camp can waive any of the provisions of the contract, so far as the sovereign camp is concerned such provision will be upheld. [Session Acts, 1911, p. 292, section 22; Day v. Supreme Council, Woodmen Circle, 174 Mo. App. 260, 156 S. W. 721; Lavin v. Grand Lodge A. O. U. W., 104 Mo. App. 1, 78 S. W. 325; Lavin v. Grand Lodge A. O. U. W., 112 Mo. App. 1, 86 S. W. 600; Clair v. Royal Arcanum, 172 Mo. App. 709, 155 S. W. 892.]

Subsection b of section 42 provides that the certificate of a member engaged in the business in which the assured had entered and remained for two years prior

to his death shall be void without the written notice to
the clerk and the payment of an additional fifty cents
each month, and yet in this case it is beyond contro-
versy that the assured was engaged in such prohibited
occupation, that he did not give the written notice, and
that he never paid or tendered the extra fifty cents per
month in addition to his regular $1.25 assessment.
When he violated this part of the contract it became
null and void without any action on the part of the
defendant order. [See, Easter v. Brotherhood of
American Yeomen, 154 Mo. App. 456, 135 S. W. 964;
Britt v. W. O. W., 153 Mo. App. 698, 134 S. W. 1073;
Knode v. Modern Woodmen, 171 Mo. App. 377, 157
S. W. 818; Day v. Supreme Forest, Woodmen Circle,
174 Mo. App. 260, 156 S. W. 721.] The assured was
therefore never in good standing in the order from
the time he failed to comply with the rule above men-
tioned, and in order for his beneficiary to claim the
benefit, under section 68 the assured must have been in
good standing at the time of his death. Section 68 of
the by-laws providing that after five years had elapsed
and the assured was in good standing the certificate
would be incontestable except because of death arising
from certain causes, does not apply to contests for a
failure to pay legal assessments due from the assured.
Courts will enforce an agreement providing for a for-
feiture in case the assessments are not paid, regard-
less of whether the condition be considered as preced-
ent or subsequent. [Thompson v. Fidelity Mut. L. Ins.
Co. (Tenn.), 92 S. W. 1098, 6 L. R. A. (N. S.) 1039;
Schmertz v. United States L. Ins. Co., 118 Fed. 250;
Metropolitan L. Ins. Co. v. Walton, 25 Ohio C. C. 587.]

If the argument of the respondent is sound as to
section 68, there is no reason for any member of such
an order ever paying any assessment after the certifi-
cate has been issued for a period of five years. It is
just as necessary that he pay the fifty cents additional
each month in order that he keep is certificate alive

when he engages in the saloon business as that he pay the $1.25 per month when not so engaged, and yet the record discloses that the plaintiff herein paid all the assessments on the certificate and that all she ever paid was $1.25 per month.

Respondent seeks to escape this situation by relying upon a remark of one of the attorneys for the defendant during the course of the trial when such attorney admitted *that they had paid up to and including the July assessment.* There was no denial that the regular assessments of $1.25 per month had been paid up to and including July, 1912. Nor is there any claim (at the trial or in this court) that the additional fifty cent charge per month was ever paid. The record cannot be contorted into a construction that the attorney for defendant admitted that this additional charge of fifty cents per month had ever been paid or tendered from the time the assured entered the saloon business to the date of his death. Nor did the attorney admit that the required notice had ever been given, which was also necessary in order to keep the certificate alive. The assured was not in good standing and his certificate had become void upon his failure to give the required notice and pay the fifty cents additional each month. [Clair v. Royal Arcanum, supra; Knode v. Modern Woodmen, supra.]

Respondent relies upon the cases of Mathews v. Modern Woodmen, and Clark v. Modern Woodmen, both supra, for an affirmance of this judgment. By reading these cases it will be readily seen that they uphold and apply the same law that we are enforcing herein, and that in those cases the court escaped declaring a forfeiture of the certificate on the clause found in the contract. In the Clark case the court points out that the contract containing the following provision: "I further understand and agree that this society does not indemnify against death caused by occupations prohibited by its by-laws," and in the Mathews case the

opinion shows that the application containing the following: "Do you understand and agree that this order does not indemnify against death from suicide or death resulting from different occupations prohibited to its members by its laws?" and that the applicant's answer was, "Yes." There can be found no such provisions in the contract we are construing, and the cases referred to are authority for appellant's rather than respondent's contention. There is nothing in our case that would indicate that there would only be a forfeiture in case the assured's death was caused by his entering into the prohibited occupation.

Nor is there anything in the record to show that the sovereign clerk or any other officer of the sovereign camp knew, at the time the letter (of October 24, 1912) was written, that the assured had violated this rule of the order forbidding its members to engage as bartenders or distributors of intoxicating liquors, and in the absence of such knowledge, the order could not on any just reason be precluded from raising a valid defense simply because it had refused payment on some other ground which might or might not be a sufficient ground for such refusal.

We realize that it is the duty of courts to find, if possible, some sufficient ground to avoid declaring a forfeiture, and a review of the decisions on insurance policies in this State will convince any one that they have not been remiss in this duty. Such forfeiture provisions should be strictly construed against the insurer, but a *strict* construction does not mean one that is unreasonable, unwarranted, unjust and oppressive. Some regard must be paid to the rights of the living as well as to those of the silent dead. It would be highly unjust to call upon the living members of this association who are abiding by its laws to pay a benefit on the life of a member who violated the plain, material provisions of his contract.

The question of the duty of the defendant to return the premiums paid during the period this certificate was not in force is in no way involved in this action.

The judgment is reversed. *Robertson, P. J.,* and *Sturgis, J.,* concur.