TENNIE F. DAVIS, Respondent, v. THE NATIONAL COUNCIL OF THE KNIGHTS AND LADIES OF SECURITY, Appellant.

Springfield Court of Appeals, June 23, 1917.

1. **MUTUAL BENEFIT INSURANCE SOCIETIES: Waiver of Laws by Officers: Statutory Powers to Prevent.** A mutual benefit society may by its constitution and by-laws under our statutes provide that none of its subordinate bodies nor its officers or members thereof shall

have power or authority to waive any of the provisions of the laws and constitution of the society. (Laws 1911, p. 292, sec. 22.)

2. **PRINCIPAL AND AGENT: What Law Governs Question of Agency.** The courts of every State and jurisdiction, either with or without the aid of some statute, deal with the question of agency under the general law and each court decides for its own jurisdiction what facts constitute one person the agent of another and the extent and limitations of the agents powers.

3. **MUTUAL BENEFIT INSURANCE SOCIETIES: Waivers: Provision Against by Constitution: Applicable to Foreign Corporations.** The statutory provisions (Laws 1911, p. 292, sec. 22) permitting mutual benefit societies to prohibit waivers by a subordinate lodge or its officers govern in actions brought in this State against foreign corporations regardless of the fact that the State where such foreign corporation was created recognizes such waivers.

4. **INSTRUCTIONS: Mutual Benefit Societies: Insurance: Waiver: Forfeiture.** In an action against a mutual benefit fraternal society the jury was instructed that if the society accepted overdue premiums and retained them after knowing of the bad health of the insured, such retention was a waiver of the forfeiture provision. The instruction was erroneous because it did not limit such action to the national council and its officers instead of the local organization.

5. **MUTUAL BENEFIT SOCIETIES: Insurance: By-law Provisions: Constructions.** Defendant mutual benefit society had a by-law providing that the retaining of an assessment should not waive any by-law provision until demand had been made for the return of the premium. Such provision only authorized retaining such payment during sufficient time for a reasonable investigation of facts.

6. ———: ———: **Forfeiture: Waiver by Retaining Payment.** Where the governing body of a mutual benefit society retained an assessment for several months and did not offer to return same, with full knowledge of the facts all the while, it thereby waived a provision forfeiting policies for failure to pay assessments promptly.

7. **INSURANCE: Mutual Benefit Societies: Waiver as to By-law Provision.** When a waiver is once made by a mutual benefit society as to provisions in its by-laws such waiver cannot be recalled.

Appeal from Jasper County Circuit Court, Division Number two.—*Hon. David E. Blair*, Judge.

AFFIRMED.

*James P. Mead* for appellant.

*Owen & Davis* for respondent.

STURGIS, J.—The defendant, as its name indicates, is a fraternal benefit association organized under the laws of Kansas and authorized to do business in this State under the provisions of Laws of Missouri 1911, pages 284 to 301. This suit is brought by the beneficiary on a benefit certificate issued by defendant on the life of Ibb P. Forney, plaintiff's son, dated August 24, 1911. The deceased was a member of a local lodge or "council" of the defendant order at Joplin, Missouri. He died on February 1, 1916; proofs of death were furnished the defendant about March 1, 1916, and this suit was filed May 18, 1916, and tried at the October term, 1916, of the Jasper County Circuit Court. The plaintiff recovered and defendant appealed.

The defense relied on is that deceased was not a member of defendant order in good standing at the time of his death because of his failure to pay in due time the monthly assessment for October, 1915. The defendant's by-laws, which are made a part of the benefit certificates issued by it, makes the monthly assessments due on the first day of each calendar month and then provide that if any such assessment is not paid on or before the last day of such month the member's certificate shall, without notice or any action taken to that end, be suspended and all rights thereunder forfeited; that no right under a suspended certificate shall be restored until the member is reinstated in compliance with the laws of the order. The laws of the order in this respect provide for reinstatement within sixty days after suspension by paying all arrearages, "Provided, however, that he (the member) be in good health at the time of making payment." By the act of payment the member is made to warrant that he is in good health.

It is conceded that the October, 1915, dues were not paid during that month but were paid on November 3, following, to the financier of the local council, and transmitted in due course to the head office or national council. It is also admitted that the deceased member was not then in good health, but was confined in the State hospital for the insane at Nevada, Missouri,

which affliction resulted in his death. These facts as to the member's health were known to the officers of the local council, inclusive of the financier, who accepted his delinquent dues. No notice of such delinquency was given to the national council or its officers till after deceased's death. In the meantime the monthly dues for November, December and January were paid in proper time. The February dues were paid after the member's death and transmitted with the proofs of death.

The proofs of death sent to the home office, made on forms provided for that purpose, disclosed that the October dues of this member were not paid till November 3, and that all subsequent dues had been paid in proper time. The October delinquency was also referred to in the answer to the questions as to suspensions and reinstatements. The attending physician's affidavit, forming part of the proof of death, disclosed that deceased died in the insane asylum and that this physician had treated him there since August, 1915, for "general paresis;" that the patient was first admitted to that institution December 4, 1913. The claimant's affidavit accompanying the proofs of death also stated that the deceased's health began failing in the "fall of 1914."

The plaintiff concedes the validity of the requirement that the dues and assessments of members be paid within a specified period and that the benefit certificate in question and all plaintiff's rights thereunder became *ipso facto* forfeited by the nonpayment of the October, 1915, dues, within that month. The plaintiff's contention is that such certificate was reinstated by the payment on the member's behalf and the receipt by defendant of such delinquent dues on November 3, notwithstanding the member was then in bad health, because defendant accepted such delinquent dues with knowledge that the member making the payment was not in good health and by so doing the defendant waived the delinquency in the payment and any forfeiture based thereon. A like proposition is predicated upon the receipt by defendant

of the subsequent dues for November, December, January and February following. The knowledge, if any, possessed by defendant, on which such waiver is based and which is the *sine qua non* thereof, is that imputed to it from the knowledge possessed by the financier of the local lodge.

The plaintiff cites many cases supporting the affirmative of the much question as to what extent and for what purpose the local lodge and its officers are agents of the head or grand lodge of such orders, and whether such agents have power to waive the provisions of the by-laws enacted by the governing body. We do not find it necessary to attempt to reconcile the seemingly conflicting decisions of this and other jurisdictions on this question. We may say that there is much reason for holding that where the superior body entrusts the collection of all the dues from the members to particular officers of the local lodges and designates them as the persons to whom the members shall pay their dues and assessments and who shall transmit same to the head office, then such lodge officer is the agent of the head or grand lodge in regard to receiving and forwarding to the head office the dues of the members. Any payment of such dues to the subordinate lodge officer charged with such duty is a payment to the superior body and the member is not responsible for such agent's default or miscarriage. [Howard v. Bankers' Union of the World, 94 Mo. App. 442, 450; Andre v. Modern Woodmen, 102 Mo. App. 377, 76 S. W. 710.] Where the governing body by a long course of conduct, showing knowledge permits its collecting agents to receive dues for members out of time, then it may be held to have waived strict payment, but such waiver is that of the superior lodge itself. [McMahon v. Maccabees, 151 Mo. 522, 52 S. W. 384; Boyce v. Royal Circle, 99 Mo. App. 349, 73 S. W. 300.] But the power of such an agent, whose duty is simple and ministerial—a sort of dumb waiter in receiving and transmitting the money—to waive the provisions of the by-laws enacter by the governing body or whose un-

communicated knowledge is imputed to the governing body and becomes the basis of an estoppel to enforce such by-laws, is a very different proposition. That the financial collector of the subordinate lodge or "council" is not an agent of the grand lodge or "National Council" with such extensive powers, where the by-laws forming part of the insurance contract provide, as is the case here, that no member or officer of the local lodge has power to waive the provisions of the contract, has been ruled in this State many times. [Thompson v. M. B. A., 189 Mo. App. 15, 176 S. W. 506; Borgraefe v. Knights & Ladies of Honor, 22 Mo. App. 127; Lavin v. Grand Lodge, 104 Mo. App. 1, 78 S. W. 325; State ex rel. v. Temperance Ben. Soc., 42 Mo. App. 485; Chadwick v. Triple Alliance, 56 Mo. App. 463; Day v. Supreme Forest, 174 Mo. App. 260, 156 S. W. 721; Lavin v. Grand Lodge, 112 Mo. App. 1, 86 S. W. 600; Clark v. Royal Arcanum, 172 Mo. App. 709, 155 S. W. 892; Brittenham v. W. O. W., 180 Mo. App. 523, 534, 167 S. W. 587 Burke v. Grand Lodge, 136 Mo. App. 450, 457, 118 S. W. 493; Knode v. M. W. A., 171 Mo. App. 377, 157 S. W. 818; Gilmore v. Brotherhood, 186 Mo. App. 445, 171 S. W. 629; Griffith v. Royal Arcanum, 182 Mo. App. 644, 166 S. W. 324.] Such, too, is the law in many other jurisdictions as shown by Royal Highlanders v. Scovell (Neb.), 4 L. R. A. N. S. 421 and cases cited in the editorial note.

This question, so far as it is involved here, is put as rest in this State by the enactment of section 22, Laws 1911, page 292, as follows: "The constitution and laws of the society may provide that no subordinate body, nor any of its subordinate officers or members shall have the power (s) or authority to waive any of the provisions of the laws and constitution of the society, and the same shall be binding on the society and each and every member thereof and on all beneficiaries of members." The defendant's by-laws, which were put in evidence, are fully as restrictive in limiting the powers of the subordinate lodges and their officers as this statute permits.

Plaintiff seeks to escape the force and effect of the above statute by showing, as she did, that defendant is a corporation organized under the laws of Kansas and that that State has no similar statute; that the common law is in force in Kansas by statute and that the law of that State, as shown by the decisions of the Supreme thereof, is that the subordinate lodge and its officers are agents of the grand lodge and have power to waive provisions of the by-laws by receiving delinquent dues of members knowing that the paying member had not complied with such by-laws. This may be conceded. [Pyramids v. Drake, 66 Kas. 538, 72 Pac. 239; Mayes v. K. & L. of S. (Kas.), 142 Pac. 290; Fraternal Aid Ass'n v. Powers, 67 Kas. 420, 73 Pac. 65; Benefit Society v. Wood, 78 Kas. 812, 98 Pac. 219.] It is then argued that every foreign corporation is restricted in its power by its charter provisions and the laws of the State of its creation which become part of the charter. [5 Thompson on Corporations, sec. 6627.] This is good law but does it apply to the question at issue? We do not think that any decision of this State either way on this question of agency in any way affects the limitation of defendant's charter powers. The courts of every State and jurisdiction, either with or without the said of some statute, deals with questions of agency under the general law and each court decides for its own jurisdiction what facts constitute one person the agent of another and the extent and limitations of the agent's powers. The courts of Kansas, as will be seen from the above cases, have dealt with this question as a question of general law applicable alike to domestic and foreign corporations doing business there, unhmpered except, perhaps, as persuasive authority, by the decisions of the State of the particular corporation's origin. So the courts of this State have always dealt with this question as one of general law applicable alike to foreign or domestic corporations where the contract is a Missouri contract; and it is a novel proposition to say that the courts of each State must decide this question of agency, not

uniformly, as a general proposition of law, but differently as determined by the domicile of each fraternal benefit society licensed to do business in this State and the solution given to such question by the courts of the particular State of such domicile. The precise question at issue may not have been presented to any court of this State, but ever since the enactment of the Law of 1911, supra, all our courts have uniformly held that section 22 is applicable to all fraternal benefit societies licensed to do business in this State under the provisions of such act, regardless of the views of the courts of the particular State where such corporation is organized on this question of agency. [Hartmann v. K. & L. of S., 190 Mo. App. 92, 175 S. W. 212; Thompson v. M. B. A., 189 Mo. App. 15, 18, 176 S. W. 506; Gilmore v. M. B. A., 186 Mo. App. 445, 452, 171 S. W. 629; Brittenham v. W. O. W., 180 Mo. App. 523, 534, 167 S. W. 587.] In the Hartmann case, supra, the court was dealing with the by-laws of the present defendant and the power of the officer of the local council to waive same because of his knowledge of the facts and the court held: "By the general language used in the sixth instruction and in the additions made by the court to the two asked by defendant, the court told the jury that if they found that 'defendant received, accepted and retained dues,' etc., with full knowledge of Hartmann's occupation, it was estopped, etc. From this the jury may have found that the knowledge of the local council and its officers and members, was the knowledge of the defendant. Under the constitution and by-laws of this order, or subordinate lodge nor any of its officers could waive any provision of the order. This is the law in this class of cases. Knowledge, under the by-laws and constitution, must be brought home to the general officers or governing body. [Section 22, Acts 1911, p. 292.]" In the Thompson case, supra, the court said: "The power to thus expressly limit the authority of subordinate lodges, whether considered as agents of the association or of the insured, is granted by section 22 of the Act of March 30, 1911, re-

lating to fraternal beneficiary associations. [Laws 1911, page 212.] It follows, therefore, that mere knowledge on the part of the subordinate lodge of Thompson's business and the acceptance by that lodge of his premiums with such knowledge, would not constitute a waiver of the forfeiture unless there was evidence from which the trier of fact could reasonably infer that the supreme lodge or some one of its general officers, knew the facts or was aware of that course of conduct.''

The trial court, therefore, erred in instructing the jury that if the financier of the local council knew of the bad health of the deceased at the time of collecting the delinquent dues for October, 1915, then her knowledge would be the knowledge of the defendant and the defendant thereby waived its by-laws requiring payment of such dues during current month and is estopped to plead a forfeiture of the benefit certificate sued on. A like error is found in the instruction basing a waiver and estoppel on the fact that the financier of the local lodge thereafter collected the December and January dues of the deceased member after receiving knowledge of his bad health.

Plaintiff's first instruction is also erroneous in predicating plaintiff's right to recover on a finding that ''Forney or plaintiff paid to defendant all dues and assessments levied and assessed by defendant against him up to the time of his death'' without regard to when same were paid or whether prompt payment was waived. Plaintiff can recover only by proving a waiver.

Knowledge of the fact that the deceased member had defaulted in the payment of his October dues and thereby forfeited his insurance and that he had attempted to reinstate such insurance by making payment on November 3, which could not lawfully be done because of his then bad health, was first brought home to the defendant's governing body by the proofs of such member's death received shortly after March 1, 1916. The jury was instructed, at plaintiff's instance, that though the defendant accepted the October dues paid

out of time without knowledge of the member's bad health at the time of payment, yet if the defendant after acquiring such information, retained such assessment or did not offer to refund same, then such retention amounted to a ratification of the collection of said assessment out of time and a waiver of any forfeiture. This instruction does not, as it should, limit the knowledge which has the effect declared to that of the national council and its officers rather than the local lodge.

When so limited, we think the evidence conclusively shows a waiver by such governing body. That it was the duty of the defendant to return the dues collected after the forfeiture of the policy will be conceded. Whether a waiver of the forfeiture can be predicated on such failure depends on the facts of the particular case. One of defendant's by-laws which, as we have seen, is part of the insurance contract, provides: "The retention by the Financier or by the Order of assessments and dues paid by members or for them with a view to reinstatement other than as provided in the Laws of the Order, either before or after death, shall not constitute a waiver of any provisions of these Laws until a demand has been duly made for their return by such member, or his beneficiary, or legal representative." No request was made by plaintiff or anyone for any return of the assessments paid and it does not appear whether plaintiff waited for a final rejection of the claim or not before bringing suit. But such by-laws can only authorize a retention of such payments a sufficient time for reasonable investigation of the facts. [Godwin v. K. L. of S., 166 Mo. App. 289, 297, 148 S. W. 980.] Suit was filed May 18th, abort two and a half months after the proofs of death were furnished. There was no administrator to whom the money could be paid on behalf of deceased's estate, but the by-laws contemplate that the same may be returned to the beneficiary. Moreover, the defendant suggests as a defense, and therefore had knowledge of the fact, that the beneficiary paid these dues in order to keep the policy in force in her own favor. Whether the defendant waived the delin-

quency in question must be determined by its attitude in the matter as shown by its acts. If, after the proofs of death were received and it knew of the member's delinquency and subsequent payment of dues and assessments, then if it determined to retain and appropriate the premiums and treat the benefit certificate as being in force it must be held to have waived any forfeiture. This it did do, for it has never yet tendered back these dues to anyone. The defendant did not intend to and was not seeking an opportunity to pay back these assessments for October to February, inclusive, as soon as the facts of the alleged forfeiture became known to it. This case was not tried until October, 1916, and defendant filed an answer in September, 1916, setting up the defense of forfeiture and at no time has it tendered by its pleadings or into court the amount should and must be repaid as a condition precedent to any judgment in its favor. The defendant cannot be allowed to retain the dues paid by or on behalf of the insured and at the same time successfully make a defense based on the nonpayment of such dues in proper time. Had the defendant been permitted to defeat this suit on this defense it would now be in the position of having defeated the insurance and yet be holding the dues which, by being paid and retained by defendant, kept the insurance in full force at the member's death. These dues should, at least, have been paid into court for whomsoever was entitled thereto. Not having done so, the defense of waiver is out of the case and we will not reverse and remand same in order to allow defendant to do what it should have done before the trial. When a waiver is once made it cannot be recalled. [Thompson v. M. B. A., 189 Mo. App. 15, 22, 176 S. W. 606; Bell v. Insurance Co., 166 Mo. App. 390, 402, 149 S. W. 33; Rhodus v. Insurance Co., 156 Mo. App. 281, 285, 137 S. W. 907; Keys v. National Council, 174 Mo. App. 671, 161 S. W. 345.]

The judgment in this case is therfore for the right party and the only judgment which the undisputed facts

permit.   The errors committed by the trial court become of no importance as to the result in this case, and the judgment is affirmed.  *Cox, P. J.,* and *Farrington, J.,* concur.