## DULCIE CROMEENS, Respondent, v. SOVEREIGN CAMP, WOODMEN OF THE WORLD, Appellant.

### Springfield Court of Appeals, June 18, 1921.

1. **APPEAL AND ERROR:** Weight of Evidence for Jury. It is the province of the jury, not the appellate court, to weigh the evidence.

2. **INSURANCE:** Whether False Representations as to Disease were Made, Held for the Jury. In an action on benefit certificate, evidence that insured did not falsely represent absence of disease or consultation with physician for five years prior to application, *held* sufficient to go to jury as against a' motion for a directed verdict.

3. **APPEAL AND ERROR:** Insurance: Instruction Making a Defense of Misrepresentations Depend on Purpose for which Made, Held Erroneous. In action on benefit certificate in which defense was that insured had made false answers in application as to existence of disease and consultation with physician, an instruction making defense depend on fact false answers were made to obtain certificate, was erroneous and prejudicial, as purpose of misrepresentation is immaterial.

4. **INSURANCE:** Representations by Applicant Considered as Warranties. Representations by an applicant for membership in a fraternal beneficiary society are considered as warranties, and, when false, avoid the policy.

5. **APPEAL AND ERROR:** Instruction Making Defense of Misrepresentations Depend on the Purpose for Which Made, Held not Cured by Defendant Pleading such Purpose. Though fraternal insurer pleaded that insured made false answers in application as to existence of disease and consultation with physician for purpose of obtaining insurance, it did not waive its right to object to an instruction making defense and false answers de-

pend on fact that answers were made to obtain the certificate as one of the essential elements, or waive his intention and that element was lacking.

6. **INSURANCE: Constitution and By-laws, Forbidding Agents of Camps to Waive Conditions of Certificate, Valid.** Constitution and by-laws of fraternal beneficiary society, providing that no officer, employee or agent of the Sovereign Camp, or any camp, has power to waive any of the conditions on which benefit certificates are issued, is valid.

7. ———: **Clerk of Local Camp has no Power to Waive Conditions of Certificate.** In view of Revised Statutes 1919, section 6418, and constitution and by-laws of fraternal benefit society, clerk of local camp could not waive condition of certificate that false answer by insured as to existence of disease and consultation with physician for five years preceding application would avoid certificate.

8. ———: **Benefit Society, Avoiding Certificate for False Answer, Need not Tender Back Premiums Paid.** By virtue of Revised Statutes 1919, section 6401, fraternal beneficiary associations are exempt from provision of section 6145 of the general insurance statute, requiring a deposit of premiums paid as a prerequisite to defending on misrepresentations.

9. **EVIDENCE: Where Testimony at Former Trial Introduced Books of Accounts of Witness not Admissible.** Where physician's testimony relating to treatment of insured for disease was read in a subsequent trial in behalf of insured to show breach of warranty, it was not error to exclude what book account of physician would show in reference to treating insured.

Appeal from Circuit Court of Pemiscot County.—*Hon. Sterling H. McCarty,* Judge.

REVERSED AND REMANDED.

*N. C. Hawkins* for appellant.

(1) There was no evidence that defendant had any knowledge of the misrepresentations. Latham v. Harvey, 218 S. W. (Mo. App.) 403; Gun v. Lbr. Co., 218 S. W. (Mo. App.) 982; State ex rel. v. Ellison, 270 Mo. Sup. 645; Stidd v. Railway, 236 Mo. Sup. 382, 399. (2)

Defendant could not lawfully be required to assume the burden of showing the motive, object or purpose moving the insured to make the false warranties. Aloe v. Ins. Co., 147 Mo. 561; McDermott v. Ins. Co., 97 Mo. App. 646-47-48; Kribs v. Foresters, 191 Mo. App. 535-36; Lewis v. Ins. Co., 209 S. W. 625.   (3)   The court erred in admitting the evidence as to receipt of premiums after insured got sick in 1918.   Section 69, Constitution and Laws of the Order; Brittenham v. W. O. W., 180 Mo. App. 526 et seq.; Fries v. Neighbors, 210 S. W. 134.

*Corbett & Stiles* for respondent.

(1)   Geo. L. Robertson, the clerk of the camp, who took the insured's application for the insurance, delivered him the certificate, and who received and accepted the payment of assessments on the insurance, knew all the facts, was the agent of the Head Camp, and his knowledge is imputed to the defendant.   Likewise, the other clerks of the camp who collected the dues and sent them in to the Head Camp.   Andre v. Modern Woodmen of America, 102 Mo. App. 377, 76 S. W. 710; Keys v. National Council, Knights & Ladies of Security, 161 S. W. 345; Hereford v. Mystic Workers of the World, 207 S. W. 761; Fries v. Royal Neighbors of America, 210 S. W. 130 (Mo. App.)   (2) The provisions of the constitution and by-laws, as to the chief officers, and agents of the Head Camp being prevented from waiving any of its terms, is beyond the provisions of the statute and invalid.   Fries v. Royal Neighbors of America, 210 S. W. 130; Keys v. National Council, Knights & Ladies of Security, 161 S. W. 345; Andre v. Modern Woodman of America, 102 Mo. App. 377; Hereford v. Mystic Workers of the World, 207 S. W. 76; Thompson v. Modern Brotherhood of America, 189 Mo. App. 15.   (3)   Where the waiver is to be inferred from facts and circumstances it is a question for the jury.   Myers v. Maryland Cas. Co., 123 Mo. App. 682; Thompson v. Brother-

hood of America, 189 Mo. App. 15. And where the insurer has followed a course of conduct indicating the waiver, the question is for the jury. Keys v. Knights and Ladies of Security, 174 Mo. App. 678; Summers v. Western Home Insurance Co., 45 Mo. App. 46; Thompson v. Modern Brotherhood of America, 189 Mo. App. 15. (4) The policy of the law is not to aid the forfeiture of a right, and slight evidence indicating an intention to waive will be sufficient to prevent a forfeiture from taking effect. Francis v. Ancient Order of United Workman, 150 Mo. App. 356; Thompson v. Modern Brotherhood of America, 189 Mo. App. 15. And defendant once having waived a forfeiture, cannot afterwards assert a forfeiture arising on the same ground. Brix v. American Fidelity Co., 171 Mo. App. 518; Francis v. A. O. U. W., 150 Mo. App. 347; Thompson v. M. B. A., 189 Mo. App. 15.

BRADLEY, J.—Plaintiff, the widow of J. Roy Cromeens, deceased, sued to recover upon a policy issued by defendant to her husband in which policy plaintiff was named as the beneficiary. The issues were submitted to a jury, and resulted in a verdict and judgment for plaintiff for the amount of the policy, and defendant appealed.

This cause was previously in this court, the former opinion being reported in Cromeens v. W. O. W., 224 S. W. 15. We remanded the cause when here before because of the exclusion of certain evidence offered by defendant. Insured was a member of the local camp at Caruthersville, Mo., and had been since 1908. The policy or certificate originally issued was in the sum of $1,000, and insured's mother was named therein as beneficiary. Insured married September 8, 1911, and thereafter on August 17, 1915, made application to defendant for an additional certificate of insurance in the sum of $1,000, designating his wife, the plaintiff, as beneficiary. Defendant approved the application. The original certificate was surrendered and a new one issued

August 23, 1915, but not delivered until October 5, 1915. In the new certificate the mother was named beneficiary for the original $1,000 certificate, and plaintiff was named beneficiary for the additional $1,000. Insured died on December 21, 1918, while in good standing. Proofs of death were made and defendant paid the $1,000 to the mother, the amount of the old certificate, but refused to pay plaintiff on the new certificate. The defense is alleged misrepresentations. Defendant avers in effect that the insured had or had had gonorrhea, syphilis, tuberculosis and pneumonia at the time of the application for the increase, and that he had been under the care of a physician within the five years prior. In the application and medical examination insured was asked if he had had any of these diseases, and if he had been consulted or treated by a physician for any disease or injury mentioned in the application during the past five years. Insured answered *no* to all these questions. The reply was a general denial and a plea in the nature of waiver.

Defendant assigns error: (1) In refusing its request for a directed verdict; (2) In giving and refusing instructions; (3) in the admission and exclusion of evidence; (4) in permitting plaintiff to amend her reply after the evidence was all in; and (5) in certain remarks of the court during the progress of the trial.

(1) Plaintiff introduced the certificate sued on together with the application and medical examination for the increase, and showed that insured died while in good standing as a member of defendant society. Plaintiff then testified that she was the beneficiary in the certificate sued on and rested. Defendant introduced in evidence the record of the local camp of which insured was a member to show that insured was sick in January, 1915. This record shows that on January 7, 1915, the local camp took up a collection, and collected $7.50 "for the purpose of hiring some one to wait on sovereign Cromeens." On January 21, 1915, the local

camp record discloses that $5 was paid "for sovereign Roy Cromeens to man sitting up." J. L. Daniels who was consul commander of the camp during 1915 testified that he went to see insured "while he was sick out there—that was during this time, during the time mentioned in these records. He was in bed sick. I don't remember that he told me what was the matter with him. There was no doctor there at that time. He said he had just come back from some place near Springfield, Mount Vernon, I believe, and was afraid he had consumption. I don't know that he said that he had it." On cross-examination this witness stated that he couldn't swear about the dates of the entries on the camp record except from the entries on the book. "I was present and I see my name on it where I signed it. Threlkeld or some such name wrote it. It was my duty to see that it was kept, but it was kept by the clerk." Clarence Meeks a member of the local camp testified that he saw insured "during the time he was sick out at his mother's." Witness was shown the dates on the local camp record, and was asked if it was during that time that he saw insured sick, and answered that he couldn't remember whether it was those dates or not. "I remember we taken up a little collection to hire a nurse to kind of look after him. I was present when they made up that money. I don't know whether it was that night. I went to see him once or twice. I couldn't say how long he was sick. I think it was several days. I would probably stay an hour and a half. There had been a doctor they said. There was no nurse at that time." Defendant called Dr. Hudgings who examined insured for the increase. He testified that he went through the regular order of examination; that he did not examine for gonorrhea or syphilis. "The examination I gave would not indicate whether or not he had had gonorrhea, not unless there were external symptoms of it. I didn't give him the Wasserman test. I simply took his statement for that fact that he had not—he said he had not." Dr. Faris testified that he had a talk with insured con-

cerning gonorrhea about December, 1912, and that insured said that he had had gonorrhea and had spent lots of money trying to get rid of it. "Q. Did he say what doctors treated him for it? A. If I remember correctly it was either Dr. Lutten or Dr. Hendrix. I am not sure—probably both. I made no examination of him." Dr. Lutten testified from his record that he treated insured on February 26th, 29th, March 1st and 9th, 1912; that he examined him for gonorrhea and that he had gonorrhea. "Q. Did he have any talk with you about syphilis—tell you anything about having syphilis prior to August 17, 1915. A. Yes, sir, he told me he thought he had syphilis, he had been subjected to it, and talked to me about it and the treatment. I treated him for syphilis. I have no record of the time and I don't remember the date. It was prior to the time he got married. Q. What treatment did you give him for syphilis? A. Gave him mercury—what we call '6-0-6'; gave him injections—the way we treat syphilis. '6-0-6' is an injection you shoot into the vein. It is a syphilis treatment. I am not very clear whether I examined him or not for syphilis. He told me he thought he had it and asked to be doctored for it. He bought the '6-0-6' and brought it to me to be injected, that's my recollection. Just before he got married he came to me and wanted to know if we thought he was well, and I told him I didn't know, couldn't tell, that he was taking big chances in getting married. Seems like it was just prior to his marriage. He was contemplating marriage. I had given him the '6-0-6' prior to that. He consulted with Dr. Hendrix and me both." This witness stated that he did not give insured the Wasserman test. "That is not the only sure way of telling whether he had syphilis or not." This witness further testified that he did a good deal of family practice for the insured; that he was out with Dr. Conrad to see insured when he (insured) was living with his mother near Sherman Rice's but did not remember date; that insured had pneumonia then. Dr. Conrad's

evidence given at the former trial was introduced. He testified that he treated insured for pneumonia, but did not have his book present and could not fix the date; that he thought it was prior to August 23, 1915; that he treated insured in January, but was not sure of the year. ''Q. State whether or not it was in January, 1915. A. It was in January, but I am not real sure what year it was. I recall I showed you the record one day as a witness, I don't know whether that is a copy or the original. I can't tell you what year it was. I use one book a year, and when that is gone I use another book; never put down the date and never keep these books over a year or two.''

Plaintiff was recalled and testified in rebuttal that she lived continuously with insured as his wife from the date of the marriage on September 8, 1911, until his death on December 21, 1918, and cohabited as man and wife, and that insured did not have gonorrhea or syphilis; and that she contracted no such disease from him; that a child was born of the marriage October 13, 1912. That insured left for Colorado in the spring of 1918 on account of having tuberculosis. She testified also that it was in the spring of 1916 when insured had pneumonia. In addition to this evidence the medical examination introduced tended to contradict the evidence of defendant as to insured having gonorrhea or syphilis. We do not deem it necessary to set out the examination in full. It, together with the evidence of plaintiff, made the controverted issues questions of fact for the jury.

There is no substantial evidence that insured had tuberculosis prior to taking out the additional insurance in August, 1915, or that he was not in good health when the certificate was delivered. The question is: Did the insured give false answers to the inquiry in the medical examination relating to gonorrhea, syphilis and pneumonia, and as to when he consulted or was treated by a physician? Defendant's evidence tends to show that insured had had gonorrhea prior to his examination

on August 17, 1915, and while not so strong there is some evidence tending to show that he also had syphilis prior to that date. On the other hand is the insured's answers in the medical examination, and the physician's private report and also the evidence of the plaintiff who was in a position to have some knowledge of the subject. She testified that insured did not have gonorrhea or syphilis while she lived with him, and that she contracted no such disease from him. There was no test made which one physician said was necessary in order to know to a certainty. Dr. Luten treated insured for syphilis, but he was not certain that he ever examined for syphilis. On the question as to whether insured had pneumonia in 1915 prior to the examination for the increase in the certificate the evidence is also in conflict. The evidence of the local camp members, and the local camp record, tends to show insured was sick in January, 1915, and the evidence of Dr. Conrad, and Dr. Luten who accompanied Dr. Conrad on one trip, tends to show that insured had pneumonia in 1915 prior to August 17th. But on the other hand plaintiff testified that insured had the pneumonia in 1916. This was after the increased certificate was issued. Unless insured consulted and was treated by a physician at the time defendant claims he had pneumonia in 1915 then there is no false answer as to consulting or being treated by a physician in the five years prior to August 17, 1915. It is not our province to weigh the evidence, that was the province of the jury. Defendant's request for a directed verdict was properly refused.

(2) At plaintiff's request the court gave three instructions as follows: "The court instructs the jury that if you find and believe from the evidence in this case that defendant issued and delivered to one J. Roy Cromeens, the beneficiary certificate or policy of life insurance offered in evidence, and that the plaintiff, Dulcie Cromeens, is the beneficiary therein, and that the assessments thereon were fully paid up at the time of the death of said J. Roy Cromeens, if you find he is

dead; and further find and believe from the evidence that said J. Roy Cromeens fully complied with all the requirements of said certificate, required therein to be performed by him, and that he made no misrepresentation as to the condition of his health, or as to any other matter in his application for said certificate or policy of insurance, *in order to obtain the same* (italics ours), and that he was in good health at the time the same was delivered to him; and further find and believe from the evidence that said J. Roy Cromeens died more than two years after the date of said certificate, or policy of insurance, and that the plaintiff, Dulcie Cromeens, has furnished to the defendant all the proofs of death of said J. Roy Cromeens, required by defendant, and surrendered to the defendant said certificate or policy of insurance, if you so find, you will find the issues for the plaintiff in the sum of $1,000, the amount of said certificate or policy.''

''The jury are further instructed that the defendant pleads as a defense in this cause that J. Roy Cromeens *in order to obtain* (italics ours) the certificate of insurance offered in evidence misrepresented the state and condition of his health at and prior to the time of the making of his application for said insurance, and that he misrepresented the condition of his health at the time the policy was delivered to him, and misrepresented as to his having been attended and consulted by a physician, within five years next before the making of said application, and in this connection you are instructed that the burden of proving such misrepresentations is upon the defendant, to prove the same by the greater weight or the preponderance of the evidence in this cause.''

''The court instructs the jury that even though you should find and believe from the evidence that the insured, J. Roy Cromeens, misrepresented the condition of his health, and made misrepresentations as to his having had gonorrhea or syphilis, or any other disease, and misrepresented as to his having been treated, at-

tended or consulted by a physician within five years, next, before the making of his application for the insurance, policy or certificate mentioned in the evidence, and that any or all of said misrepresentations were made by the said J. Roy Cromeens at the time and in his application for said insurance; yet if you further find and believe from the evidence that the defendant, with knowledge of the facts, that said representations had been made by the said J. Roy Cromeens, *continued to accept from the said J. Roy Cromeens the payment of the premiums or assessments on said certificate or policy of insurance, after the defendant had knowledge of the fact that said representations had been made by the said J. Roy Cromeens,* if you so find, you will find the issues in this case for the plaintiff.''

Defendant challenged the italicised portions of the first and second instructions. We think the point is well taken. The *purpose* of the misrepresentations, if any, is not of consequence. If the misrepresentations were made then plaintiff cannot recover, and it makes no difference for what purpose they were made. A clause in the application for the certificate provides that: ''I hereby certify, agree and warrant that all of the statements, representations and answers in this application, consisting of two pages, as aforesaid, are full, complete and true whether written by my own hand or not; and I agree that any untrue statements or answers made by me in this application or to the examining physician, or any concealment of facts in this application or to the examining physician intentional or otherwise, or my being suspended or expelled from or voluntarily severing my connection with the order in any of its jurisdictions, or if I fail to comply with the laws, rules and usages of the order, now in force or hereafter adopted, my beneficiary certificate shall become null and void, and all the rights of any person or persons thereunder shall be forfeited.'' If insured gave false answers to questions in the medical examination such would avoid the certificate or policy sued on. [Kribs v. United Order

of Foresters, 191 Mo. App. 524, 177 S. W. 766.] Representations made by an applicant for membership in a fraternal beneficiary society are, in this State, considered as warranties, and when false avoid the policy. [Valleroy v. Knights of Columbus, 135 Mo. App. 574, 116 S. W. 1030; Hoagland v. Modern Woodmen, 157 Mo. App. 15, 137 S. W. 900.] Plaintiff contends that since defendant pleaded that insured made false answers *for the purpose of obtaining* the insurance that the instruction is proper. It was perhaps unnecessary in this cause for defendant to so plead, but by doing so it did not waive any of its rights under the law. To hold that because defendant pleaded that the alleged false answers were given for the purpose of obtaining the insurance would justify the challenged portion of the instruction, would in effect change the entire character of the insurance certificate sued on. There is no support for such holding only on the theory that by so pleading defendant waived its right to invoke the law applicable to fraternal beneficiary societies. One of the essential elements of waiver is *intention,* and that element is wholly absent here. To the contrary every act of the defendant conclusively shows that it had no intention by so pleading to waive any of its rights. Nor can it be said that the italicised portion of the first instruction is harmless. In fraternal policies the insured may give answers touching the condition of his health, etc., in perfect faith, and ignorant of their falsity, yet if it turns out that he was in error, and the policy provides as here that such will avoid the policy, then the policy is void. We think the italicised portion of the first instruction should have been eliminated. That wording would mislead the jury, and tend to deprive defendant of the laws applicable to it. What we have said concerning the first instruction is equally applicable to the second so far as concerns the challenged portion, and it is therefore unnecessary to discuss the second instruction separately. This error appeared in these instructions when the cause was here before, but no point was made in the respect

here made, and the matter was not called to our attention.

The third instruction is bottomed upon waiver. Plaintiff contends that one Robertson who was clerk of the local camp when insured's certificate was increased took the application for the increase, and knew all the facts, and that subsequent clerks were cognizant of all the facts, and that notwithstanding this knowledge on the part of the local camp, said camp through its clerk continued to collect dues from the insured, and send said dues to the head camp, and for this reason defendant cannot rely on the alleged false warranties. While it appears that the clerk took the application and sent it in, there is nothing to show that he had any knowledge concerning the information contained in the medical examination. He may have sent in the medical examination along with the other papers pertaining to the application, but he certainly would not be expected to acquaint himself with the information contained therein. There is nothing here to show that the local camp had any information concerning insured's health except that the local record shows that insured was sick in January, 1915. But how could the local officers be expected to know that in the medical examination of August 17, 1915, that insured made false answers to questions which if answered correctly would have disclosed this sickness if insured was in fact sick at the time? Insured may have had pneumonia in January, 1915, and may have been treated by a physician for pneumonia at that time, and might have given this information correctly in his medical examination, and yet received the policy. The fact that insured may have had gonorrhea, syphilis or pneumonia or that a physician may have treated him for some disease mentioned in the five year period does not prevent a policy from issuing; but if the insured made false warranties concerning matters inquired about, then the false warranty .is· what avoids the policy. The issue of the alleged false representation or warranty in the case here is established by proof

that insured had had gonorrhea, syphilis or pneumonia, or had consulted or been treated by a physician in the five year period. There is nothing to show that the local officers had information about anything that would tend to establish waiver, and it was error to submit that issue. Plaintiff injected into the waiver theory the fact that the local camp through its clerk, with knowledge that insured was in Colorado in 1918 presumably because he, insured, had tuberculosis continued to accept dues from insured. There is no evidence that insured had tuberculosis in August, 1915, and certainly defendant did not waive its right to plead false representations merely because the local camp, clerk or other local officer *understood* that insured was in Colorado because of tuberculosis some three years after the policy was delivered, when there is no evidence that insured had tuberculosis when the certificate for the increase was issued and delivered. What we have said thus far on the question of waiver is on the assumption that the local officers might waive if the facts supported waiver. Not only are there no facts to support waiver, but the local officers had no authority to waive, and could not waive in the manner contended for here. Defendant offered in evidence section 69 of its constitution and by-laws as follows: "No officer, employee or agent of the Sovereign Camp, or of any camp, has the power, right or authority to waive any of the conditions upon which benefit certificates are issued, or to change, very, or waive any of the provisions of this constitution or these laws, nor shall any custom on the part of any camp or any number of camps—with or without the knowledge of any sovereign officer—have the effect of changing, modifying, waiving or foregoing such laws or requirements. Each and every beneficiary certificate is issued only upon the conditions stated in and subject to the constitution and laws then in force or thereafter enacted." By the terms of the policy this by-law was a part of the contract. This is a valid by-law, and has been upheld a great number of times in this State.

[Brittenham v. W. O. W., 180 Mo. App. 533, 167 S. W. 587; Hubbard v. Modern Brotherhood, — Mo. App. —, 193 S. W. 911; Sec. 6418, R. S. 1919.] In all the cases, at least since the enactment of 1911, Laws 1911, sec. 22, p. 292, now sec. 6418, supra, where such waiver as urged here has been upheld, knowledge in some manner was attributed to the head camp or organization. In the case at bar there is no evidence tending to show that the head camp had any information or chance to have information of any fact relied upon by plaintiff to constitute waiver.

Plaintiff in her reply pleaded that defendant had waived its right to plead misrepresentations for the reason that it had failed to tender back the premiums or assessments received from the insured. Plaintiff however, did not submit this point in her instructions. The Supreme Court in a very recent case (State ex rel. Brotherhood of American Yeomen v. Reynolds et al., 229 S. W. 1057), held that by virtue of section 6401, Revised Statutes 1919, fraternal beneficiary associations are exempt from the provisions of section 6145, Revised Statutes 1919, of the general insurance statute requiring a deposit of the premiums paid as a prerequisite to defending on misrepresentations and quashed the opinion by the St. Louis Court of Appeals in Wilson v. Brotherhood of American Yeomen, 223 S. W. 992.

(3) The evidence admitted of which meritorious complaint is made pertained principally to the issue of waiver, and since we have disposed of that question, it is not necessary to take it up here. The evidence excluded related to what Dr. Conrad's book would show with reference to when he treated insured. Dr. Conrad was called away just prior to the trial, and defendant read the evidence of this witness as given at the first trial. Defendant then sought to show what Dr. Conrad's book account would show with reference to treating insured in January, 1915. Objection was made and sustained. There was no error in this ruling.

(4) The fourth assignment is based upon the permission given plaintiff to amend her reply and specifically plead waiver. This question in effect is disposed of, supra, under the disposition of the question of waiver submitted in the third instruction, hence we could and would decide nothing by considering the assignment based on the permission of the amendment pleading waiver. Waiver is not an issue, and cannot be under the facts here.

(5) We find no remarks of the court that would tend to prejudice defendant. The judgment below, for the errors noted, should be reversed and the cause remanded, and it is so ordered.

*Cox, P. J.,* and *Farrington, J.,* concur.