ANNIE E. THOMPSON, Respondent, v. MODERN
   BROTHERHOOD OF AMERICA, Appellant.

**Kansas City Court of Appeals, May 3, 1915.**

1. **FRATERNAL BENEFICIARY ASSOCIATIONS: Engaging in Forbidden Business: Forfeiture: Waiver.** In a suit by the beneficiary upon a benefit certificate in a fraternal life insurance association, the defense was that the insured had forfeited his insurance by engaging in the saloon business. *Held*, that there was evidence from which the court, sitting as a trier of the fact, could find that the Supreme Lodge or its general officer knew that the subordinate lodge was, notwithstanding such business, receiving insured's dues and continued to do so up to his death, and hence the forfeiture was waived.

2. ————: ————: ————: ————: **Retaining Premiums Paid After Knowledge of Forfeiture.** For five years or more prior to his death insured engaged in a forbidden occupation during which time the lodge continued to receive his dues. The evidence showed that for a year or more prior to the trial, the association knew the occupation of the deceased insured, knew what lodge he belonged to, and investigated the matter and knew that as far back as five years he had engaged in the forbidden business at Excelsior Springs. With this knowledge it filed an answer setting up a forfeiture by reason of engaging in the business at Chillicothe less than a year before his death, and tendered the premiums paid after that time, but retained those paid prior thereto. *Held*, that the prior forfeiture was waived and having once waived it, the association could not afterward assert a foreitfure arising on the same ground.

Appeal from Livingston Circuit Court.—*Hon. A. B. Davis*, Judge.

AFFIRMED.

   *Fred S. Hudson* and *Sparrow & Page* for appellant.

   (1) The by-laws, as well as all other sections and provisions thereof, including the terms of the application, were a part of the benefit certificate issued

to Thompson, and a part of the contract between him
and appellant. Richmond v. Sup. Lodge, 100 Mo.
App. 19; Laker v. Royal Fraternal Union, 95 Mo. App.
353; Loyd v. M. W. A., 113 Mo. 19; Gallop v. Royal
Neighbors, 167 Mo. App. 85. (2) Thompson was
conclusively presumed to know the provisions of these
by-laws. Curtain v. Grand Lodge, 65 Mo. App. 297;
Boyce v. Royal Circle, 99 Mo. App. 349; Burkholter
v. Travelers Ass'n., 139 Mo. App. 606; Shartle v. M.
B. A., 139 Mo. App. 433; Day v. Woodman Circle, 174
Mo. App. 260; M. W. A. v. Tevis, 117 Fed. 369; 54
C. C. A. 293.

*B. B. Gill & Son, S. L. Sheetz* and *Frank Sheetz*
for respondent.

(1) After knowledge that Thompson had engaged
in the liquor business, appellant retained $28 dues paid
to it by him and thereby waived his conduct. Righter
v. Loyal Protective Association, 131 Mo. App. 498;
Rhodus v. Life Ins. Co., 156 Mo. App. 281; Keys v.
National Council, 174 Mo. App. 671. (2) The sub-
ordinate lodge is the agent of appellant and appellant
is bound by its notice, knowledge and consent. High
Court L. O. F. v. Schwitzer, 117 Ill. 325, 49 S. E. 506;
Jones v. Supreme Lodge, 86 Me. 193; Benefit Society
v. Watson, 84 N. E. 29; Supreme Lodge v. Withers,
177 U. S. 260; Modern Woodmen v. Breckenridge, 10
L. R. A. (N. S.) 136; Order of Columbus v. Fuqua,
60 S. W. 1020. (3) The appellant by its conduct in
receiving the dues of Thompson for years led him to
believe that he was a member of defendant order and
entitled to its benefits. Shartle v. Modern Brother-
hood, 139 Mo. App. 440; Johnston v. Modern Brother-
hood, 27 L. R. A. (N. S.) 446. (4) Notice will be
presumed when the violation of a by-law has been
continued for years. Shartle v. Modern Brotherhood,
139 Mo. App. 440; Johnson v. Modern Brother-

hood, 27 L. R. A. (N. S.) 446. (5) Appellant waived forfeiture by permitting and requiring respondent to go to expense of making proof of death and costs of a law suit without denying liability. Keys v. K. & L. of Security, 174 Mo. App. 680; McCullum v. Niagara Ins. Co., 61 Mo. App. 352.

TRIMBLE, J.—This action rests upon a fraternal benefit certificate issued by appellant on March 12, 1906, to respondent's husband, John W. Thompson, who was then in the coal and feed business at Excelsior Springs. He died at Chillicothe, Missouri, April 13, 1913.

The by-laws under which the cetrificate was issued, and by which it was governed provided that all insurance became, *ipso facto,* null and void if the holder of the certificate engaged in the sale of intoxicating liquor as the proprietor of a saloon.

Thompson, at the time of his death, was a saloon keeper in Chillicothe. Appellant refused to pay the certificate on the ground that his insurance was forfeited. Respondent contended that such forfeiture was waived. This issue of waiver or no waiver was submitted to the court, siting as a jury, and its finding was in favor of respondent.

The answer to the question whether a fraternal beneficiary association has waived the forfeiture of a benefit certificate for a violation of the contract of insurance, depends upon the particular facts in each case.

Thompson became a member of appellant's subordinate lodge No. 1583 at Excelsior Springs and his policy or certificate was delivered to him there on March 15, 1906. In April or May, 1907, he bought a saloon at Excelsior Springs and openly engaged in that buisness and continued therein. His saloon was located one block from the post office across the street

189MA2

from the city hall on Thompson avenue, one of the most frequented and public thoroughfares of that little city. His business was advertised in the local papers and it was common talk over the town that he was in that buisness. The president of the local lodge admitted he knew it; the examining physician at that time and who still holds that position, testified that he knew it, and that he so informed the secretary whose duty it was to collect the premiums from each member and remit them to the head office. This secretary's predecessor also knew it at the time he was in office or was acting as such secretary in charge of the books and engaged in collecting and remitting premiums from the members including Thompson. In fact, there was abundant evidence from which the court sitting as a jury could find that the fact that Thompson was running a saloon was well known in that community and to all the members and officers of the subordinate lodge. Nevertheless he was treated as a member in good standing in said lodge, and his dues were regularly received and remitted to the head office by the local lodge's secretary, down to the time he died.

Under the by-laws, no action on the part of either the subordinate or supreme lodges was necessary to carry into effect the forfeiture arising from the engagement in such prohibited occupation; and neither the subordinate lodge nor any of its officers had any authority to waive the same. The power to thus expressly limit the authority of subordinate lodges, whether considered as agents of the association or of the insured, is granted by section 22 of the Act of March 30, 1911, relating to fraternal beneficiary associations. Laws 1911, page 212. It follows, therefore, that mere knowledge on the part of the subordinate lodge of Thompson's business and the acceptance by that lodge of his premiums with such knowledge,

would not constitute a waiver of the forfeiture unless there was evidence from which the trier of fact could reasonably infer that the supreme lodge or some one of its general officers knew the facts or was aware, of that course of conduct. And this seems to be the holding even in cases where the above cited statute had no application. [Burke v. Grand Lodge A. O. U. W., 136 Mo. App. 450, l. c. 457; Knode v. Modern Woodmen, 171 Mo. 377; Modern Woodmen v. Tevis, 117 Fed. 369; Griffith v. Royal Arcanum, 166 S. W. 324; Brittenham v. Woodmen of the World, 167 S. W. 587; Gilmore v. Modern Brotherhood, 171 S. W. 629.] Consequently, unless there is room in the evidence for a reasonable inference on the part of the trier of fact that the association itself knew the situation, the mere knowledge of the subordinate lodge and its continued acceptance of Thompson's dues would not of itself create a waiver. As to whether there is room for such an inference, it should be noted that Thompson was openly engaged in the business, with slight interruptions, for five or six years prior to his death; that it was so open and public that if the Supreme Lodge exercised any supervision over the local lodge at all it was likely to learn of the course it was pursuing. Under the by-laws the Supreme Lodge had concurrent jurisdiction with the subordinate lodge over the members in matters of discipline. It had power to revoke the charter of any subordinate lodge for reasonable cause in all matters pertaining to the welfare of the society. It could suspend subordinate lodges, remove its officers and appoint others temporarily in their places. If a secretary knowingly received premiums from a member who was engaged in a prohibited occupation it was the duty of the subordinate lodge to expel him, and when once expelled he was inelligible for membership ever after. If a subordinate lodge failed to expel him the Supreme

President could suspend the lodge until it had done so. The business of the society with its members was transacted entirely through the subordinate lodge and its officers, and the collection of the premiums assessed was done through them. If now any supervision whatever was exercised over the subordinate lodges to see that they were obeying the rules, the fact that Thompson was being retained by his lodge although he was a saloon keeper would have been at once discovered. And the fact that the lodge continued for five or six years to collect insurance premiums from him in spite of his prohibited occupation would tend to show either that the Supreme Lodge was exercising no supervision whatever over the local lodge or did not want to know whether the rules were being obeyed in that respect or not. Now, appellant did not put any evidence in to show affirmatively that it had not received from any source whatever notice that Thompson was a saloon keeper. It merely contented itself with asking the officers of the subordinate lodge if they ever notified the Supreme Lodge or any of the general officers of that fact. This, however, did not show that notice was not received by them in some other way. Of course notice to them is ordinarily to be shown by the party asserting a waiver. But if length of time in which the rule against a prohibited occupation is disregarded has any force in raising the presumption of knowledge on the part of the society itself, then it would seem that six years ought to be sufficient for that purpose. In Johnson v. Modern Brotherhood of America, 109 Minn. 288, 1. c. 291, it was said that if the evidence showed that insured had been engaged in a prohibited occupation "for such a length of time that it (the Brotherhood) should be presumed to have knowledge, we would have no doubt of plaintiff's right to a verdict." In Shartle v. Modern Brotherhood of America, 139 Mo. App. 433, 1. c. 440, it is said that even

if a course of dealing he had with insured through officers of a subordinate lodge, who are without authority to bind the society, yet if it has been carried on in such way or for such length of time as that it must have been known to the supreme officers of the general society, it will become binding. It is not necessary, however, in this case to hold that mere lapse of time will raise the presumption of knowledge on the part of the society, since there are other facts in evidence from which an inference of knowledge may be said to have arisen. It seems that between March and June, 1907, there was a controversy between the secretary of the local lodge and the Supreme Lodge concerning the former's accounts, and an auditor went there and examined into affairs, and about June 1, 1907, the Supreme Lodge was convinced that the secretary was all right. Again, there is evidence in the record tending to show that when appellant's answer was filed it knew that Thompson had engaged in the saloon business at Excelsior Springs five years or more before his death, and yet the answer alleged that he engaged in that business about September 1, 1912. Evidently the company was putting the act of forfeiture as near the date of insured's death as possible which shows that it realized that if the forfeiture was placed at the time when it first occurred, there would be trouble in meeting the charge of waiver. And the failure of appellant to produce evidence affirmatively showing that it was wholly without knowledge of Thompson's occupation from any source, is, in this connection, significant. All of these are circumstances which the trier of fact could take into consideration in passing on the question whether the forfeiture, by reason of Thompson's having entered the saloon business in 1907, was or was not waived by the society. The policy of the law is not to aid the forfeiture of a right, and slight evidence indicating an intention to

waive will be sufficient to prevent a forfeiture from taking effect. [Francis v. Ancient Order of United Workmen, 150 Mo. App. 347, l. c. 356.]

Again, waiver, or estoppel to deny waiver, may arise in other ways than through knowledge on the part of the society prior to the maturing of the policy by the death of the insured. To entitle the society to claim a forfeiture and to avoid the charge of having waived the same, it must place itself in a position to insist upon such forfeiture by paying back all the premiums received by it after the forfeiture arose. It cannot retain premiums paid and received on the theory that the insurance was in force and at the same time claim that it was not in force.

Now, the certificate was issued to Thompson, March 12, 1906, and from that time he remained a member of the society and of the subordinate lodge at Excelsior Springs until his death, April 13, 1913, and his dues were paid to June 1, 1913. Proofs of death were furnished April 30, 1913. Suit was filed August 22, 1913. Appellant's original answer was filed January 5, 1914, in which it was alleged that Thompson forfeited his insurance on September 1, 1912, by engaging in the saloon business. An amended answer was filed April 15, 1914, in which it was alleged that since April 30, 1913, it learned that Thompson forfeited his insurance by engaging in the saloon business and fixed the date of such forfeiture at September 1, 1910, and again tendered, as did the first answer, the sum of $8.75 paid by insured as premiums after that date. The proofs of death showed that Thompson was in the liquor business when he died. So that from April 30, 1913, to April 20, 1914, the date of trial, appellant knew insured's occupation, knew what lodge he belonged to, and knew the exact amount of money he had paid into the society as premiums. Appellant also knew that if it was going to rely on a forfeiture

it was necessary to ascertain when insured first engaged in the forbidden occupation so that it might tender the correct amount of premiums paid to it since the forfeiture. The evidence shows that prior to the trial a man representing the society was at Excelsior Springs investigating this very matter. And if the evidence does not affirmatively show that he learned there that Thompson had been engaged in the liquor business for five years or more prior to 1912, it is inconceivable that he did not learn it since it was so well known in that community. There was no fraudulent concealment of the fact on the part of either Thompson or the lodge; nor was there any conspiracy on the part of the lodge and Thompson to avoid the effect of his occupation. Consequently, when the society's representative was at Excelsior Springs examining into the very matter involved herein, he learned that Thompson engaged in the liquor business in 1907, and yet the answer is filed placing the forfeiture more than five years later, and none of the premiums paid by Thompson from April, 1907, to September, 1912, were offered to be returned. In other words, the society held on to the premiums paid during that time as if the insurance was in force, and even now after the trial and after it had been conclusively shown that he had been engaged in the saloon business practically four or five years prior to the forfeiture alleged and relied upon, the society still holds on to such premiums and has made no offer to return them. It, therefore, must have ignored, forgave and waived the forfeiture arising in 1907, and is in no position to insist upon it though it is insisting upon an alleged forfeiture arising in Chillicothe by reason of Thompson's going there and entering the saloon business in July, 1912. But having once waived a forfeiture for that reason, it cannot afterward assert a forfeiture arising on the same ground. [Brix v. American Fi-

delity Co., 171 Mo. App. 518; Francis v. A. O. U. W., 150 Mo. App. 347; Bell v. Missouri State Life Ins. Co., 166 Mo. App. 390.] Certainly where the waiver is to be inferred from facts and circumstances, it is a question for the jury. [Meyers v. Maryland Casualty Co., 123 Mo. App. 682.] And where the insurer has followed a course of conduct indicating a waiver, the question is for the jury. [Keys v. Knights and Ladies of Security, 174 Mo. App. 671, l. c. 678; Summers v. Western Home Ins. Co., 45 Mo. App. 46.]

It follows from what has been said that we are not authorized to disturb the finding and judgment of the learned trial court, hence its action must be affirmed. It is so ordered. All concur.