### SOVEREIGN CAMP OF WOODMEN OF THE WORLD v. MILLER.
### (No. 7833.)

(Court of Civil Appeals of Texas. Galveston. Feb. 20, 1920. Rehearing Denied March 11, 1920.)

1. **Insurance** ⊙⟹755(1) — **Fraternal insurer may waive though subordinate body has no power of waiver.**

A fraternal insurer itself may with notice or knowledge of the facts waive compliance with the by-laws, although such by-laws take from the officials of the subordinate body, as a camp, general powers to create waiver.

2. **Insurance** ⊙⟹695—**Where fraternal insurer directed member to give notice of change of occupation to local camp, notice to clerk is notice to insurer.**

Where the by-laws of a fraternal insurer directed a member on changing occupation to give notice to the clerk of the local camp, notice to such clerk is notice to the insurer itself.

3. **Insurance** ⊙⟹755(3) — **Fraternal insurer held to have waived right to demand from member higher premium because of change in occupation.**

A fraternal insurer *held* to have waived right to demand from a member a higher premium because of change of occupation where the member in accordance with the by-laws notified the clerk of local camp that he had become a wholesale liquor dealer, and was ready to pay any increased premium if that was a prohibited occupation and only the old premiums were exacted.

4. **Insurance** ⊙⟹726½—**By-law declaring saloon keeping prohibited occupation held too vague to exclude wholesale dealer.**

Where the by-laws of a fraternal insurer named as prohibited occupations saloon keeping, bartending, retailing of intoxicating liquors as a beverage, and the making of intoxicants, such by-law does not extend to the wholesale distribution of intoxicants by one who did not personally handle the same save by construction, and hence is no basis for forfeiture of insurance on the ground the member had become a wholesaler, and did not pay the increased rate for engaging in prohibited occupation; for a forfeiture must be clear and definite.

Appeal from District Court, Colorado County; M. Kennon, Judge.

Action by Mary Bartels Miller against the Sovereign Camp of the Woodmen of the

World. From a judgment for plaintiff, defendant appeals. Affirmed.

E. D. Henry, Perry S. Robertson, and Atlas Jones, all of San Antonio, for appellant.

Townsend & Quin, of Columbus, for appellee.

LANE, J. This is an action on a fraternal beneficiary certificate of insurance, issued by the defendant on' the 23d day of March, 1895, upon the life of A. C. Miller, the deceased husband of plaintiff, Mary Bartels Miller, who was at the time of the death of insured named in the certificate as beneficiary. Insured died on the 9th day of March, 1918. Defendant refused to pay the insurance, and thereupon this suit was brought.

The certificate sued upon contained the following provisions:

(1) "This certificate is issued and accepted subject to the conditions on the back hereof, and those named in the constitution and laws of this fraternity, and shall be forfeited if said sovereign does not comply with said conditions, constitution and laws and such by-laws as are now in force or may hereafter be enacted by the Sovereign Camp or the camp of which he is a member at the date of his decease."

(2) "This certificate is issued in consideration of the representations and agreements made by the person named herein, in his application to become a member, and in consideration of the payment made when introduced in prescribed form, also his agreements to pay all assessments and dues that may be levied during the time he shall remain a member of the Woodmen of the World. * * * If the admission fees, dues, or beneficiary fund assessments levied against the person named in this certificate shall not be paid to the clerk of his camp, as required by the constitution and laws of the order, this certificate shall be null and void and continue so until payments are made in accordance therewith."

It also contained a provision that, if the insured should become so far intemperate from the use of intoxicating liquors as to produce delirium tremens, the same should become void.

By way of affirmative defense, defendant pleaded section 42 of the laws of defendant, made a part of the certificate, which, among other things, provided as follows:

"The beneficiary certificate of a member who shall engage in any prohibited occupation shall thereby become null and void unless such member shall within thirty days after engaging in such prohibited occupation notify the clerk of his camp, in writing, of such change of occupation, and thereafter, while so engaged, pay an additional sum of fifty cents on each monthly installment of assessment for each one thousand dollars of his beneficiary certificate, or six dollars additional per annum on each one thousand dollars of his beneficiary certificate."

By supplemental petition the plaintiff, after making general denial to the allegations of defendant's answer, alleged that at the time of the death of insured he was a member in good standing of the society and had complied with all the conditions required by this certificate and the laws of the society.

The trial was before a jury, to whom the following special issues were submitted, and the answers following given, to wit:

(1) "Had the insured at the time of his death become so far intemperate from the use of intoxicating liquors as to produce delirium tremens? Answer: No."

(2) "Do you find from the evidence that after the insured entered into the prohibited business he believed that he was paying all that was required of him under the rules and regulations of the defendant? Answer: Yes."

(3) "Do you find from the evidence that insured was led to believe that he was paying all that was required of him under the rules and regulations of the defendant by the fact that no demand was made upon him for any additional payments? Answer: Yes."

(4) "Do you find from the evidence that from that time on he believed that his certificate was .valid? Answer: Yes."

Upon these answers of the jury the court rendered judgment in favor of plaintiff against defendant for the sum of $3,000, less the sum of $23.28, as being the balance due at the time of the death of the insured on the certificate sued upon on account of difference between the old rate and the new rate prevailing after September 1, 1915, which was charged to said certificate by provisions of the laws of defendant, less also the further sum of $49.50, being the additional amount due on said certificate by deceased under the laws and constitution of defendant and the terms of the certificate, by reason of the fact that appellant had engaged in business as a wholesale dealer in malt liquors and the delivery and distribution of such liquors by his agents.

At the time the policy was issued, insured was engaged in the stock-raising business. Thereafter, on or about the 1st day of July, 1915, while the policy was in force and effect, he engaged in the business of wholesale dealer of malt liquors, and when he made sales such liquors were delivered by his agents and employés to the purchasers.

On July 17, 1915, he wrote and caused to be delivered to S. J. Nussbaum, clerk of his local camp at Columbus, Colorado county, Tex., the following letter:

"Columbus, Tex., July 17, 1915.

"Mr. S. J. Nussbaum, Clerk Sycamore Camp No. 7, Columbus, Tex.—Dear Sir: This is to notify you that I am now engaged in the business of wholesale dealer in malt liquors, and am the local agent in Columbus, Tex. This notice is given in accordance with the constitution and by-laws of the Sovereign Camp of the Woodmen of the World, in order that additional assessments may be charged against me, if any are required. If any additional assessment is

required, kindly have same charged to my policy, and oblige,

"Yours truly,    A. G. Miller."

While he was so engaged in said business in 1915, 1916, 1917, and 1918, up to the date of his death insured continued to pay to the clerk of his local camp his dues at the rate required of him at the time the policy was issued to him, and which had prevailed for about 20 years prior to his engaging in the liquor business and up to the time of his death. Insured knew that the raise in the general rate from September 1, 1915, was being charged to his policy under the provision of the laws of the defendant. No different or higher rate was paid by him, nor was any different or higher rate at any time demanded.

Under defendant's laws (section 42) all of its policy holders were forbidden to become saloon keepers, bartenders, or to retail or engage in the retail of intoxicating liquors as a beverage, or to become employed in the making of malt, spirituous, vinous, or intoxicating liquors, or in the distribution or delivery of the same; and it was provided, as heretofore shown, that if such policy holder engaged in any of the forbidden acts, he within 30 days should notify the clerk of the local camp of such engagement, and while so engaged pay on each assessment 50 cents for each $1,000 of his certificate in addition to the regular rate. Failing to do this, such policy holder would stand suspended from the society, and his certificate be null and void. As before stated, the insured notified the clerk of the local camp that he was engaged in business as a wholesale dealer in malt liquors, but no additional dues for increased hazard were paid or demanded, although insured in his notice expressed a willingness to pay such increased rates if such were demanded.

The defense is based: First, upon the assumption that insured engaged in the forbidden business or occupation and his failure to pay the additional 50 cents on each $1,000 of his certificate required in such case; second, that prior to and at the time of his death insured had become so far intemperate from the use of intoxicating liquors as to produce delirium tremens.

Plaintiff meets these defenses by saying: First, that defendant was notified in manner and form as required by its laws that insured was engaged in the wholesale liquor business, and invited further assessments, if any were due from him, and that, notwithstanding such notice and invitation, defendant continued to receive and appropriate the assessments paid by him under the old rate from July 1, 1915, up to the 8th day of March, 1918, the day of his death, without any notice to insured that he owed any additional assessment, and that by such acts and conduct of

defendant insured was led to believe and did believe that he was not engaged in any business forbidden by the laws of defendant, and that his policy was not affected thereby, and that such acts and conduct constitute a waiver on the part of defendant, and that defendant is thereby estopped from asserting a forfeiture of the policy issued to insured; second, that the finding of the jury that insured had not, prior to his death, become so far intemperate from the use of intoxicating liquors as to produce delirium tremens, is amply supported by the evidence.

Section 24 of the laws of defendant, defining the duties of the Sovereign Clerk, among other things provides:

"He shall prepare and mail to every [local] camp within the sovereign jurisdiction, in ample time to reach the clerk thereof on or before the 1st day of every month, notice of such assessment or assessments, if any, as are ordered by the Sovereign Commander."

Section 69 provides:

"No officer, employé, or agent of the Sovereign Camp, or of any camp, has the power, right or authority to waive any of the conditions upon which beneficiary certificates are issued, or to change, vary or waive any of the provisions of this constitution or these laws, nor shall any custom on the part of any camp or any number of camps, with or without the knowledge of any sovereign officer, have the effect of so changing, modifying, waiving or foregoing such laws or requirements. Each and every beneficiary certificate is issued only upon the conditions stated in and subject to the constitution and laws then in force or thereafter enacted. The constitution and laws of the Sovereign Camp of the Woodmen of the World now in force, or which may hereafter be enacted, by-laws of the camp now in force, or which may be hereafter enacted, the application and certificate shall constitute a part of the beneficiary contract between the order and the member."

The laws of defendant also provide that the clerk of the local camp "shall not by act, representations, waivers or by vote of his camp, have any power or authority not delegated to him or to the camp by the constitution and laws of this society to bind the Sovereign Camp or his camp."

[1-3] The defendant insists that it is apparent from these laws that the local clerk had no power to waive the laws of defendant. We think, however, notwithstanding the laws above quoted, that a fraternal association may itself, with notice or knowledge of facts, waive compliance with by-law requirements, and may by its act estop itself from a strict enforcement of its laws against its policy holders.

Where a fraternal association's by-laws required members engaging in any particular occupation, business, or employment considered more hazardous than the occupation, business, or employment engaged in by such mem-

bers at the time of becoming members to "notify the clerk of their local camp" of such change in occupation, etc., notice of such fact to such clerk was notice to the association itself, and where the association with such notice failed to increase the amount of dues or assessments and accepted payment of such dues or assessments at the old rate, down to the date of the death of the insured member, it waived compliance with the by-laws requiring payment of a higher rate or an additional assessment for the more hazardous occupation, and also waived the suspension of the member, as provided for by the by-laws, for failure to pay such higher or additional rates. Jegglin v. Sov. W. O. W., 216 S. W. 815; Sov. W. O. W. v. Putnam, 206 S. W. 970; Thompson v. Modern Brotherhood of Am., 189 Mo. App. 15, 176 S. W. 506; Hubbard v. Modern Brotherhood of Am., 193 S. W. 911.

While it is true that the laws of defendant referred to above do take from the clerks and other officers of the local camp, and indeed from the local camp itself, the general powers to create a waiver, yet the defendant itself, with notice or knowledge of the facts, may do so. Thompson v. Modern Brotherhood of Am., 189 Mo. App. 15, 176 S. W. 506; Jegglin v. Sov. W. O. W., 216 S. W. 815.

It will be noted that in the present case the by-laws provide that, if a member does engage in any prohibited occupation, his certificate of insurance shall become null and void, unless such member shall, within 30 days after engaging in such prohibited occupation, notify the clerk of his camp in writing of such change of occupation. In other words, the defendant says to the insured:

"If you make such change in your occupation, the local clerk is the one whom you shall notify."

Having thus specified the clerk as the one to whom notice shall be given, is not notice to him notice to the Sovereign Camp? It seems to us that it is. Consequently, when insured notified the local clerk in writing that he was engaged in the business of wholesale malt liquor dealer, this was notice to the Sovereign Camp itself of such fact, since that was the method prescribed by the defendant for giving such notice.

"The policy of the law is not to aid the forfeiture of a right, and slight evidence indicating an intent to waive will be sufficient to prevent a forfeiture from taking effect." Thompson v. Modern Brotherhood of Am., 189 Mo. App. 15, 176 S. W. 506.

If notice to the local clerk was, under the provisions of the by-laws, notice to the defendant itself, as we think it was, then the defendant is in the position of having received and accepted payment of all dues at the old rate down to the date of death of the insured with notice that he was engaged in the supposed forbidden or more hazardous occupation. We repeat, it had this notice, because notice to the local clerk was the only means provided by the laws of the defendant whereby notice could be given.

The judgment rendered is supported by evidence showing waiver and estoppel on the part of defendant, pleaded by plaintiff. We have also reached the conclusion that there was ample evidence to support the finding of the jury that the insured had not, prior to his death, become so far intemperate from the use of intoxicating liquors as to produce delirium tremens.

[4] Before concluding this opinion we deem it appropriate to say that we are inclined to agree with appellee's contention that the occupation or business in which the insured was engaged just prior to his death was not a "forbidden occupation" as that term is used in the by-laws of appellant.

Section 42 of appellant's laws, by virtue of which appellant claims a forfeiture of the certificate issued to insured, names the following occupations as forbidden occupations: Saloon keepers, bartenders, retailers of intoxicating liquors as a beverage, engaging in the making of malt, spirituous, vinous or intoxicating liquors, or employed in the distribution or delivery of the same. The undisputed evidence shows that insured was pursuing the occupation or business of wholesale malt liquor dealer; that he began such business about the 1st day of July, 1915, and that he continued in such business up to the 8th day of March, 1918, the date of his death; that such business consisted of the wholesale selling of malt liquors, such sales being made in the original or unbroken parcels to the retail trade; that he kept no bar, retailed no intoxicating liquors, was not employed in making any kind of intoxicating liquors; that he did not distribute or deliver any such liquors; and that the liquors sold by him were distributed and delivered by his employés and not by him.

It is, we think, by no means clear that the business in which insured was engaged was one of the occupations named by section 42. At least it cannot be seriously contended that the language used in such section clearly designates the occupation engaged in by the insured as one of the occupations forbidden by section 42. That the language of section 42, if intended to embrace the occupation of the insured, is ambiguous, we have no doubt.

"If the provision [of section 42] is ambiguous, that alone condemns it as a forfeiture provision. A forfeiture should rest upon surer ground. Where a contract is so vague in its terms that a court cannot determine its meaning, it would be unjust to enforce a forfeiture under it against one whose only fault has been to possibly mistake its meaning. Forfeitures are harsh and punitive in their operation. They

are not favored by the law, and ought not to be. The authority to forfeit a vested right or estate should not rest in provisions whose meaning is uncertain and obscure. It should be found only in language which is plain and clear, whose unequivocal character may render its exercise fair and rightful." Decker v. Kirlicks, 216 S. W. 386.

The testimony of S. J. Nussbaum and J. C. Wirts, the two persons who held the office of clerk of the local camp at Columbus, Tex., at different times during the time the insured was engaged in the malt liquor business, was to the effect that as such clerk it was their duty "to go around and collect the assessments every month"; that they collected the assessments from the insured regularly every month during the years 1914, 1915, 1916, 1917, and 1918, up to the death of insured; that they knew that insured was engaged in the business of wholesale dealer in malt liquors in the town of Columbus; that Mr. Miller was in the wholesale business, and not in the retail business; that he kept a stock of beer and ice, and sold and by his employés delivered it to the saloon men in and around Columbus, Glidden, Altair, and Alleyton, from 1915 up to the time of his death; that witnesses were familiar with the increased assessments that any one had to pay for going into a prohibited business; that they have to pay more; that they did not think Mr. Miller had to pay more, because he was not in the retail business; that he was not retailing it; that nobody could go there and get a bottle or glass of beer; that when they collected from Mr. Miller they collected all they understood he ought to pay, which was $2.35.

It is only by inference, at best, that the meaning of section 42 as contended for by by appellant can be gained from the language used therein. A provision so indefinite as to the obligation imposed is incapable of supporting a forfeiture. Benavides v. Hunt, 79 Tex. 383, 15 S. W. 396.

The judgment of the trial court is affirmed. Affirmed.