## SOVEREIGN CAMP, W. O. W., *v.* GARNER.

[90 South. 586.  No. 22340.]

INSURANCE. *Defendant society held estopped to assert forfeiture for change of employment.*

> In a suit on a certificate of fraternal insurance, where the society defends on the ground that the certificate had been forfeited by reason of the assured having changed employment in violation of the provisions of· the constitution and by-laws of the society, and where it is admitted that the proofs of death contained full information in reference to assured's employment at the time of his death and the length of time he was engaged in the prohibited employment, and the regular premiums collected during the time assured was engaged in a prohibited employment were not refunded, and no offer to refund the same was ever made, *held,* that the provisions of the constitution and by-laws in reference to a change of employment were waived, and the society was estopped to assert a forfeiture of the policy.

APPEAL from circuit court of Covington county.

HON. W. H. HUGHES, Judge.

Suit by Mrs. Floyd Dora Garner against the Sovereign Camp, Woodmen of the World. Judgment for plaintiff, and the defendant appeals. Affirmed.

*W. U. Corley,* for appellant.

Where by-laws of a fraternal insurer provided that, if a member should engage in a prohibited occupation, the certificate should be void unless he gave notice and paid an additional premium, the failure of a member, who engaged in a prohibited occupation to give notice and pay the additional premium invalidated the policy without action of the insurer. *Brittenham* v. *W. O. W.,* 167 S. W. 587. When he violated this part of the contract, it became null and void without any action of the appellant. Id. See, also, *Easter* v. *Bro. of Am. Yeomen,* 154 Mo. 456;

*Britt* v. *W. O. W.,* 134 S. W. 1073; *Knode* v. *Modern Woodmen,* 157 S. W. 818; *Day* v. *Supreme Forest, etc.,* 156 S. W. 721. If appellee's contention was correct, and to admit for argument's sake that it is, then the case of *Simmons* v. *Sovereign Camp, W. O. W.,* 188 S. W. 941, covers this case like a blanket.

The acts of a local agent, clerk, beyond the scope of his prescribed authority, in the absence of notice or knowledge of an acquiescence in them by some of the principal officers of the society, constitutes no waiver, estoppel or contract of the association. They were not the acts of the society and the insured and the beneficiaries were charged with knowledge of that fact. *Modern Woodmen* v. *Tevis,* 117 Fed. 369. See, also, *Jones* v. *Modern Bro., etc.,* 140 N. W. 1059; Bacon, Benefit Societies (3 Ed.), 434.

"A beneficial association may limit the authority of its agents by a provision in its policy, or by its by-laws; and an agent whose powers are thus limited cannot bind the association beyond the limits of his authority, by contract," etc., says the Tevis case, reported in 54 C. C. A. 293.

"The insured and the beneficiaries under a contract of a beneficial association are charged with knowledge of the limitations upon the powers of the association's agents which are found in the certificate," etc. Ib.

"The clerk had no authority to waive anything, but if he did, he had no authority to do so. Where a fraternal benefit society without authority and contrary to express provisions of its charter, formally admits one to membership totally ineligible, its action is void, and the subsequent retention by the society of the dues and assessments paid by such member does not operate as a waiver of the right to contest a claim," etc. *Fraternal Tribunes* v. *Steel,* 114 Ill. App. 194, judgment affirmed; 74 N. E. 121; 106 Am. St. Rep. 160.

No person will be allowed under the law to take advantage of their own unlawful acts. Insured knew he was violating the law of the society, and was charged with that knowledge. Where an applicant for benefit insurance,

stated the facts as to his occupation, but knew the clerk inserted wrong answers, his contract was invalid and not binding, even though the agent knew all the facts. See *Matheson* v. *Modern Sam'ts,* 91 Minn. 434. "Acceptance by local lodge officers of arrearages from suspended members known to be sick, held not to waive the by-laws," etc. *Hartman* v. *Natl. Coun.,* 147 Pac. 931.

It is the general rule that officers of a mutual insurance association have no authority to waive its by-laws so far as they relate to the substance of the contract. *Crowley* v. *A. O. H.,* 110 N. E. 276.

Waiver of exemption of a fraternal benefit society from liability for death due to employment in a prohibited occupation must be by the home office where the contract is made with it. *Showalter* v. *Modern Woodmen,* 120 N. W. 994.

The case of *Supreme Commandry United Order of Golden Cross, etc.* v. *Bernard, et al.,* reported in 6 Ann. Cas. on page 696, second paragraph, we find the authorities are quite in accord that where the by-laws of a fraternal and beneficial society provides for forfeiture and disconnection follows the nonpayment of an assessment, the member failing to pay must suffer the penalty. See also, Bacon, Benefit So., sec. 385; *Borgraefe* v. *Supreme Lodge,* 22 Mo. 127; *Tood* v. *Mutual Ben. Asso.,* 31 Fed. Rep. 62; *McDonald* v. *Ross-Lewin,* 29 N. Y. 87.

We call special attention to the decisions of the United States supreme court, in case of *Northern Assur. Co.* v. *Grand View Bldg. Asso.,* reported in 183 U. S. 308, 22 U. S. Rep. 133, where it is held: "That where the waiver relied on is an act of an agent, it must be shown either that the agent had express authority to make the waiver, or that the company subsequently with knowledge of the facts, ratified the action of the agent. This case also holds that it was not necessary that the agent should have notified the society.

The secretary-treasurer of a local council of a fraternal insurance order has no authority to waive the constitution

and by-laws of the order as to payment of dues and assessments at maturity, and the practice of receiving payments thereafter is not binding on the order unless authorized or ratified. *United Com. Trav'lrs* v. *Young* (U. S. C. C. A.), 212 F. 132.

Acceptance of dues by a local officer of a fraternal benefit society, which are over due and from a suspended member with notice that the member was in ill health, is not a waiver. *W. O. W.* v. *Shaw*, 85 S. E. 827.

The insured in this case was *ipso facto* suspended by his own acts. If the suspension of a member has taken place *ipso facto* for nonpayment of dues, an officer has no authority to waive such suspension where the constitution and by-laws specifically exclude such authority. *Glaspy* v. *United Brotherhood*, 163 Ill. 478.

Where a policy is issued to a member of a benefit society, conditioned that he be received and retained in pursuance to the rules of the order, and he is received and retained in violation, it works a forfeiture. *Nat. Council U. S. A. Mech.* v. *Thompson*, 156 S. W. 132.

The collection and retention of the dues and assessments of a member engaged in a prohibited business, by the local treasury of a benefit society, whose duties it was to collect and remit, and even though he had knowledge of it, does not waive the forfeiture on that ground, because the supreme organization of which he was a member had no knowledge of it. *Brown* v. *G. C. etc.*, 132 N. W. 562.

A person becoming a member of a fraternal society is chargeable with knowledge that no officer has any authority to exempt him from any obligation common to all members. *Galvin* v. *Knights, etc.*, 155 S. W. 45.

The acts of a ministerial officer, which are unauthorized by the association, or its superior officers, are not binding on it and may not invoke as evincing a waiver of its rights unless ratified with knowledge of the facts. *Clair* v. *Supreme Coun. Royal, etc.*, 155 S. W. 892.

Under the by-laws of a mutual benefit society, the acceptance by the secretary of the local lodge of premiums

after notice that the insured had engaged in a prohibited occupation, held not a waiver on the part of the supreme lodge not to raise an estoppel against the enforcement of the forfeiture. *Jones* v. *M. B. A.,* 155 N. W. 923.

Certainly there was in this case no intention to waive anything by a secretary, who did not even have knowledge of it, until the policy was *ipso facto* void. "The acceptance of premiums after suspension has automatically been effected, does not waive the suspension, in the absence of evidence showing intention to waive. *Wall* v. *Brotherhood Painters,* 165 Ill. 159.

Receipt of assessments from a member after *ipso facto* forfeiture of his membership for non-payment of his assessments held are not a waiver of forfeiture. *Wheatley Admrs.* v. *Knights of Col.,* 170 S. W. 937. We call attention also to case of *Crites* v. *Modern Woodmen of the World,* reported in 117 N. W., 776, wherein this question is discussed as to hazardous occupations, and there held that the order was not estopped from pleading its exemption from liability due to the fact that he engaged in a prohibited occupation. This case was given a rehearing and again confirmed in 121 N. W. 591.

Acceptance of dues from a member by a fraternal society without knowledge that he had forfeited his insurance by engaging in an extra-hazardous occupation does not constitute a waiver of the forfeiture. This case was reheard, and reaffirmed in 126 Appeal Div. 934, by the supreme court of New York.

The supreme court of Oklahoma in the case of *Modern Woodmen* v. *Weekley,* 139 Pac. 1138, held: "Where after issuance of a benefit certificate, the insured entered a prohibited occupation, the company was not estopped from denying liability even though it had accepted the dues for a permissible occupation.

The supreme court of Nebraska, in the case of *Royal Highlanders* v. *Scovill,* 66 Neb. 213, held that receipt of dues with knowledge of the local officer of his ill health,

was no waiver. The same court held the same thing in
the case of *Field* v. *National Council*, 64 Neb. 226.

The supreme court of West Virginia, in the case of
*Medley* v. *German Alliance*, 55 W. Va. 342, held that for-
feiture for a breach is not waived by retention of the prem-
iums after notice thereof. The receipt of dues by a finan-
cial officer of a subordinate lodge is not of itself a waiver
of other conditions for the reinstatement, etc. *Adams* v.
*Grand Lodge*, 66 Neb. 389.

Provisions prohibiting the waiving of by-laws by of-
ficials are valid, says the supreme court of Oregon in case
of *Hartman* v. *National Council*, 147 Pac. 931.

The supreme court of the state of Tennessee in case of
*Simmons* v. *Sovereign Camp, etc.*, 188, S. W. 941, holds
that no waiver can be effected by the subordinate officers.

We are not unmindful of the court's decision ·in the
*Fraternal Aid Union* v. *Whitehead*, 87 So. 453. Neither
are we unmindful of the constitution section of appellant,
No. 69, wherein it says: "No officer, agent or employee of
the sovereign camp, or any camp, has the power, right or au-
thority to waive any of the conditions upon which a bene-
ficiary certificate was issued, etc."

Then if all cases are to be controlled by this very strict
rule of law, it would be a very easy matter for section 41
of the Constitution to be violated and the fraternal society
bound by a contract admitting a negro, a person over age,
or under age, or a woman, or still further, it could be bound
to insure against the provisions of section 42 of the Con-
stitution, and insure professional gamblers, saloonkeepers
(if we had any), balloonist, aviators, aeronauts, aeroplan-
ist and automobile racers. It would be just as easy to
waive this right by the acts of the local officer, is it would
to allow hazardous occupations to prevail and keep it from
the knowledge of the insurer. For this very reason, the
legislature in 1916 adopted section 20, chapter 206, and
this very statute has been upheld by the courts of Tennes-
see, Missouri, Minnesota, Oregon, New York, and practic-
ally every citation made in this brief.

*E. L. Dent,* for appellee.

It will be seen from the pleadings that the question of waiver and estoppel is the only one to be considered. If the head camp officers, received and retained the premiums and dues from the insured from . . . month of 1917 as one of the appellant's pleas states, or from June, 1918, as the other one states, until his death, and after all the required proofs of death had been received by such head camp officers and they knew from such proof all the facts and circumstances both as to his occupation and cause of his death, and with such knowledge retain these several months' dues, they thereby certainly waive the provisions contained in section 43 of the Constitution and by-laws with reference to occupation and are therefore estopped from setting up section 43 as a defense to this suit. In other words they cannot keep the dues and at the same time deny liability.

The uncontradicted proof in this record shows that Ernest Walker had been acting clerk of the camp at Ora for three years or longer; that all the members and officers of the lodge or camp at Ora recognized him as the acting clerk for that length of time; that he collected all the dues, kept the books, remitted to the head camp and performed all the duties of clerk just as if he had been the regularly elected clerk. He transacted all the business of the order in place of his father, the regularly elected clerk, and that it was the understanding when his father was elected that Ernest would attend to all the business, perform all the duties attached to it, and have possession, all of which he did until his health required him to go away and his father would have had to resign but he got permission from the camp to let his daughter look after the business. While Ernest was acting in the place of his father collecting dues, giving receipts and making all kind of reports, he was certainly a *de facto* officer for appellant. 29 Cyc., page 1389, and cases cited in note; *Bell* v. *State,* 38

So. 795; *Vicksburg* v. *Groome,* 24 So. 306; *Cooper* v. *Moore,* 44 Miss. 386; *Rhodes* v. *McDonald,* 24 Miss. 418.

If Ernest was a *de facto* officer for appellant then his knowledge, acts and conduct would be binding on appellant the same as the knowledge, acts and conduct of his father, Mr. H. T. Walker.

We also further respectfully submit that the appellant, by its conduct, has waived any defense it might have had to this action. The following facts are uncontradicted: Proof of death included the affidavit of the beneficiary, sworn and subscribed to the 20th day of January, 1919; the affidavit of John Garner, sworn and subscribed to the 28th day of December, 1918; the certificate of the attending physician, sworn and subscribed to the 5th day of January, 1919; the certificate of the Consul Commander, the Banker, and the clerk of the camp, subscribed and sworn to the 29th day of January, 1919. Mr. Yates, the sovereign clerk, testified that he received these proofs of death some time during the latter part of January, 1919, or the first part of February, 1919. The suit was filed June 4, 1919, and service had on appellant the same day. It will therefore be observed and is evident that the clerk of the sovereign camp had full notice of the occupation of the decedent from and after the first part of February, 1919, and knew the decedent died leaving as his heirs, his wife and several children; the head camp officer also knew that all the dues had been fully paid and the last two monthly installments, No. 11 and No. 12, were paid to the camp clerk before his death, and the appellant was chargeable with knowledge of all these facts relied on as a defense, when it filed its said pleas.

It is further established that, notwithstanding this knowledge of the facts set forth as a defense, the sovereign clerk also knew that the dues were overpaid, and he remitted the munificent sum of ninety-five cents admitted to be, as stated, an overpayment of dues. It, therefore, cannot be disputed that this appellant, with full knowledge of all the pertinent facts, retained all the dues, received

for and on behalf of the member up to the time of his death and has never made any effort to return one dollar of this amount; and it also appears that there was overpaid during this period the sum of ninety-five cents which, for some reason or other, the appellant has returned.

It is also pertinent to observe in this connection that the camp clerk, in his affidavit, testifies that the decedent was engaged in the occupation of assistant stationary engineer for six months." Therefore he has full knowledge or notice, even if the present defense could be made, would be binding on the defendant, and deprive it of the right to refuse payment of the amount claimed. 29 Cyc., 194, 195, and cases cited; *Hendrickson* v. *Grand Lodge A. O. U. W.,* Supreme Court of Minn., Dec. 13, 1912; 138 N. W. 946, 947.

The receipt by the grand lodge of a mutual benefit society of dues from a member whom it knows to be engaged in a business which, under the laws of the order, terminates his rights to participate in the beneficiary fund, waives the forfeiture, although the provision itself states that such receipt shall not constitute such waiver. For other cases, see Insurance, V. B. 5, 6, in Dig. 1-52 N. S. *Bell Peterson et al.* v. *Grand Lodge of Ancient Order of U. W. of South Dakota,* L. R. A., 1916F, 791, 36 S. D. 539, 156 N. W. 70, February 1, 1916. See, also, note, page 755; *Sovereign Camp W. O. W.* v. *Dismukes* (Sup. Ct. Miss., May 8, 1905), 38 So. 351; *Thompson* v. *Modern Brotherhood of America,* 1 Kans. City Ct. of Appeals, Mo., May 31, 1915, 176 S. W. 506, 507; *Allen* v. *National Counsel of Knights and Ladies of Security* (Sup. Ct. of Kan., Dec. 8, 1917), 169 Pac. 569, 570; *Pringle* v. *Modern Woodmen of America* (Sup. Ct. of Neb. July 12, 1907), 113 N. W. 231; *Modern Woodmen of America* v. *Coleman, et al.,* (Sup. Ct. of Neb., March 5, 1902), 89 N. W. 641; *Thompson* v. *Modern Brotherhood of America,* 176 S. W. 506L; *Grand Lodge of B. R. T.* v. *Clark* (Sup. Ct. Ind., May 12, 1920), 127 N. E. 280; *Hart* v. *W. O. W.,* 106 S. E. 508; Bergeron v. *Insurance Co.,* 111 N. C. 45, 15 S. E. 883; *Fishblate* v.

*Fidelity Co.,* 140 N. C. 489, 43 S. E. 354; See, also *Carden* v. *Sons & Daughters of Liberty,* 179 N. C. 399, 102; *Fraternal Aid Union* v. *Whitehead* (Dec. Mch. 21, 1921), Div. B. reported in 87 So. 453; *Modern Woodmen* v. *Coleman,* 68 Neb. 660, 94 N. W. 814.

There are no material facts controverted in this record, and as the appellant insisted in the court below, and so insists here, that this is a question of law to be decided, and as there was no question of fact to be decided by a jury, it was entitled to a peremptory instruction, and so asked for. The appellee making the same contention in the court below, and likewise asked for and obtained a peremptory instruction, we respectfully submit the case was fairly tried, and the conclusion reached was legal and just.

We respectfully maintain, therefore, that as the defendant has never returned one dollar of the dues paid during this period of six months, it has waived any right to present the defense upon which it relies. We, therefore, respectfully submit that this case should be affirmed.

COOK, J., delivered the opinion of the court.

Appellee instituted this suit against the Sovereign Camp of the Woodmen of the World to recover on a certificate of fraternal insurance issued for her benefit on the life of her son, William A. Garner, now deceased, and from a judgment for appellee this appeal was prosecuted.

To the declaration filed in this cause, appellant filed its plea of the general issue, and also filed a special plea averring that the beneficiary certificate had been forfeited and became null and void long prior to the death of the insured by reason of the fact that he had changed his occupation from an unhazardous to a hazardous employment in violation of section 43 of the constitution and by-laws of the society. Issue was joined on this plea, and there was a judgment for appellee, from which an appeal was prosecuted to this court, and this judgment was reversed. The

issues as made at the time of the first trial will be found
fully set forth in the opinion on the former appeal, which
is reported in 125 Miss. 8, 87 So. 458. Upon the remand
of the cause appellee filed an additional replication and
notice of special matter in defense and avoidance of the
matter pleaded by appellant, which in substance averred
that full and complete proofs of death and loss, showing
the change of occupation of the insured and the length of
time he was engaged in a prohibited occupation, had been
received by the defendant society on or about the 1st day
of February, 1919; that suit on the contract of insurance
was filed on the 4th day of June, 1919; that the Sovereign
Clerk of the Sovereign Camp had full notice of the occupa-
tion of the deceased from and after the 1st of February,
1919; that the defendant society was chargeable with
knowledge of all these facts when it filed its special plea
setting up the violation of section 43 of its constitution and
by-laws; that as many as eight or more monthly payments
of dues and assessments were paid to the defendant society
through the clerk of the local camp after the insured's
change of occupation; that after the receipt of proofs of
death and loss, with full knowledge of the change of oc-
cupation of deceased, the defendant society denied liability
and refused to pay to the beneficiary the amount of the con-
tract and policy sued on; that it failed and refused to re-
turn to the beneficiary or the personal representative of
deceased, the premiums, dues, and assessments levied on
account of said policy; that in filing its several pleas it
made no offer to return these dues and assessments, but
has retained the premiums, dues, and assessments which
were paid to it after the date of the alleged forfeiture for
the purpose of keeping in force the insurance contract sued
on; that the deceased gave the clerk of his local camp no-
tice of his change of occupation before said change was
made and within thirty days after the change of his oc-
cupation; that the clerk of defendant's local camp, and
the party in charge of defendant's business and affairs at
the local camp of which deceased was a member, had full

notice from the time deceased changed his occupation; that by reason of the acts and knowledge of the clerk of the local camp, who forwarded the premiums and dues to the defendant, who acted for the defendant society in collecting and transmitting dues, giving receipts therefor, the condition of section 43 of the constitution and by-laws was waived by the defendant; that by reason of the fact that the defendant society has failed and refused to return any of the premiums paid as aforesaid, but, on the contrary, has retained the same for its own use long after the death of the insured, and after knowledge of all the facts in reference to the change of occupation, without any offer whatsoever of returning the same, the provisions of the constitution and by-laws with reference to a change of occupation were waived, and the defendant is now estopped to deny liability on the contract of insurance.

At the conclusion of the testimony the jury was peremptorily instructed to find for the plaintiff for the amount of the policy sued on, and from the judgment entered in pursuance thereof, defendant appealed.

The deposition of John T. Yates, Sovereign Clerk and *ex officio* secretary of the defendant society, was offered offered in evidence, and he testified that it was part of his duties to receive notices of change of risk, change of occupation, or other similar notices from the members of the various local camps, that prior to the death of the insured he did not receive any notice of the insured having changed his occupation to one that was classed as hazardous, and that no officer of the society had such knowledge or information prior to the death of the insured. He further testified that the proofs of death of the insured showed that he was engaged in a hazardous occupation at the time of his death, and that his first information of such change of occupation was received when these proofs of death were received by him, as Sovereign Clerk, some time during the latter part of January, 1919, or the first part of February, 1919, and to his deposition he attached as a part thereof the proofs of death received by him. These proofs

show that deceased was employed as an assistant engineer in a power house or electric generating plant at the date of his death, and that he had been so employed for a period of six months prior to his death.

The testimony shows without conflict that, with the full knowledge and consent of the members of the local camp, the son of the clerk of the local camp performed all the duties of clerk, that he had full knowledge of insured's change of employment, and that insured was guilty of no fraudulent concealment of his change of employment.

The suit on this policy was filed on the 4th day of June, 1919, while defendant's pleas were filed on the 2d day of July, 1919. These pleas averred that the insured entered a hazardous employment in June, 1918, and that by reason thereof his beneficiary certificate became void within thirty days thereafter, but no offer was made to return the regular dues and assessments collected during the six-months period intervening between the date of the alleged forfeiture and the death of the insured. It is conclusively shown that the premiums collected during this period were never repaid or tendered, and it is admitted that from about the 1st day of February, 1919, the officers of the society had full knowledge of all the facts. Can the defendant society then claim that the policy was void, and avoid the charge of having waived the forfeiture, and at the same time retain the monthly premiums paid to it since the date of the alleged forfeiture for the purpose of maintaining the policy in force?

In *Thompson* v. *Modern Brotherhood of America,* 189 Mo. App. 15, 176 S. W. 506, it is said:

"Again, waiver, or estoppel to deny waiver, may arise in other ways than through knowledge on the part of the society prior to the maturing of the policy by the death of the insured. To entitle the society to claim a forfeiture and to avoid the charge of having waived the same, it must place itself in a position to insist upon such forfeiture by paying back all the premiums received by it after the forfeiture arose. It cannot retain premiums paid and re-

ceived on the theory that the insurance was in force, and
at the same time claim that it was not in force."

In *Gray* v. *National Ben. Ass'n*, 111 Ind. 531, 11 N. E.
477, the society defended upon the ground that its rules
and by-laws forbade the issuance of a certificate of in-
surance to any person under the age of eighteen years, and
that decedent had falsely misrepresented his age in his
application, and warranted that he was over the age of
eighteen years, and that this false representation was not
discovered until proofs of death were furnished.   In pass-
ing upon the question the court there said:

"If it were true, as stated in its answer, that appellee
never knew that [deceased] was under of the age of eigh-
teen years until appellant furnished it with proofs of his
death, yet, as the record shows that such proofs of death
were so furnished more than eighteen months before this
suit was finally determined in the court below, and as it
does not appear that appellee had ever offered to rescind
or cancel the certificate or contract sued on, or to re-
fund the money it had received thereon, it must be held, we
think, that such certificate or contract had been so ratified
and confirmed by appellee as to estop it from asserting
the defense to this suit attempted to be stated in  .  .  .
its answer."

In *Schreiber* v. *German-American Hail Ins. Co.*, 43 Minn.
368, 45 N. W. 709, the court said:

"As it does not appear that this defendant had notice
of the breach alleged when it enforced payment of the
premium notes, that did not constitute a waiver.   But the
action to enforce the notes could proceed only on the
theory that the policy was valid.   It was a solemn asser-
tion of its validity.   And, having by that means compelled
the insured to perform the contract on his part, it certainly
seems unjust that it should retain what it thus compelled
the insured to pay, and be permitted to escape the obliga-
tions of the contract on its part.   After it learned that it
might elect to avoid the policy, honesty required that, be-

fore so electing, it should restore the money, payment of which was thus exacted. The retention of that money was —in morals, certainly—inconsistent with an intention to avoid the policy."

In Joyce on Insurance, vol. 2, par. 1404, the author says:

"If the policy is avoided by a misrepresentation of the assured made without fraud, the premium is returnable, especially where the company have positive knowledge of that which it insists effected the forfeiture, for in such case it would be inequitable for the company to retain the premiums, and at the same time claim that it is not bound thereby."

The great weight of authority now seems to recognize the rule that, wherever the contract is void for actual fraud on the part of the assured, there need be no return of premiums paid; but the evidence in this record completely negatives any charge of misrepresentation or fraudulent concealment of facts. It is admitted that about the 1st of February, 1919, the defendant society acquired full knowledge of all the facts upon which it bases the assertion of forfeiture. This suit was not filed until several months thereafter, and the defendant, while asserting that the policy became void in June, 1918, failed to return or offer to return the consideration paid by the assured to keep the policy in force. If the insurance was not in force after June, 1918, the decedent owed no premiums after that date, and the defendant cannot retain the premiums paid after that date, and thus avail itself of the benefits of the contract and at the same time escape the liability imposed thereby. For several months prior to the filing of defendant's pleas, and for more than two years prior to the final trial of this cause in the court below, the defendant had full knowledge of all the facts in reference to the insured's change of employment, and since it has never refunded or offered to refund the premiums collected after the date of the alleged forfeiture. we think the provision of the constitution and by-laws in reference to a change of employment has been waived, and that defend-

ant is now estopped to assert a forfeiture of the policy. The learned circuit judge so held, and the judgment of the court below is affirmed.

*Affirmed.*